## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JAMES WINDSTEAD,** *et al.,*

      **Plaintiffs,**

      **v.**

**THE DISTRICT OF COLUMBIA,** *et al.***,**

      **Defendants.**

**Civ. A. No. 04-887 (JMF)**

## MEMORANDUM OPINION

      This case is before me for all purposes including trial.  Currently pending before me is the <u>District of Columbia Defendant's Motion to Dismiss or in the Alternative, for Summary Judgment</u> ("Defs. Mot.").  For the reasons stated below, the motion will be granted in part and denied in part.

## INTRODUCTION

      Plaintiffs are eleven current or former District of Columbia employees and the estates of two former District of Columbia employees who have made claims for disability compensation pursuant to the District of Columbia Comprehensive Merit Personnel System Act ("CMPA").[1]  Defendants are 1) the District of Columbia, 2) Mayor Adrian Fenty,[2] and 3) James Jacobs, Director of the Office of Risk Management.[3]  Both Fenty and Jacobs are sued in their official capacities.

---

[1] On May 21, 2007, the estates of two individual plaintiffs were substituted as plaintiffs.
[2] Fenty became Mayor in January of 2007, and therefore replaced former Mayor Anthony Williams as a named defendant.  <u>See</u> http://dc.gov/mayor/bios/fenty.shtm (last visited March 4, 2008).
[3] Defendant Computer Literacy World/Creative Disability Management was terminated on October 29, 2005.  <u>See</u> <u>Stipulation of Dismissal Without Prejudice</u> [#20].

**DISCUSSION**

I.      Defendants' Motion to Dismiss

Defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure for failure to state a claim upon which relief can be granted.  Under Rule

12(b)(6), complaints are liberally construed and all factual allegations in the complaint as

well as any inferences that may be drawn from them are accepted as true. Lightfoot v.

District of Columbia, No. 01-CV-1484, 2007 WL 148777, at *5 (D.D.C. Jan. 16, 2007).

A.      Plaintiffs' § 1983 Claim

In order to ascertain whether plaintiffs have stated a claim for municipal liability

pursuant to § 1983, the Court must first determine "whether the complaint states a claim

for a predicate constitutional violation." Baker v. District of Columbia, 326 F.3d 1302,

1306 (D.C. Cir. 2003) (citations omitted).  The Court must next determine "whether the

complaint states a claim that a custom or policy of the municipality caused the violation."

Id.  Accord Brown v. District of Columbia, No. 05-CV-5320, --- F.3d ----, 2008 WL

268899, at *3 (D.C. Cir. 2008); Bowman v. District of Columbia, 477 F. Supp. 2d 217,

220 (D.D.C. 2007).  "[A] local government may not be sued under § 1983 for an injury

inflicted solely by its employees or agents.  Instead, it is when execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts

or acts may fairly be said to represent official policy, inflicts the injury that the

government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs. of

City of New York, 436 U.S. 658, 694 (1978).  Liability pursuant to § 1983, therefore, is

not based on a theory of *respondeat superior*. Id. at 691.

In Count 1 of the Amended Complaint, plaintiffs state the following:

2

"Defendants did intentionally, knowingly, willfully and with complete disregard of Plaintiffs' rights deny Plaintiffs due process of the law by arbitrarily and capriciously administering the [CMPA[4]]." Amended Complaint ¶ 86.  Thus, plaintiffs claim that defendants violated their Fifth Amendment[5] due process rights in the administration of the CMPA.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Matthews v. Eldridge, 424 U.S. 319, 323 (1976).  In order to have a property interest in a benefit such as disability compensation, plaintiffs must have a "legitimate claim of entitlement to it." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).  It is undisputed in this Circuit that the CMPA creates such an interest; plaintiffs' Amended Complaint therefore sufficiently states a claim for a predicate constitutional violation under the Fifth Amendment.  See Fonville v. District of Columbia, 448 F. Supp. 2d 21, 26 (D.D.C. 2006).  Accord McManus v. District of Columbia, No. 07-CV-252, --- F. Supp. 2d. ----, 2007 WL 4573442, at *16 (D.D.C. 2007).

Plaintiffs also state the following in their Amended Complaint:  "At all times relevant hereto, Defendants have acted under the color of state law and have maintained through habit, custom, prior practices, rules, and/or regulations, a policy or practice of denying Plaintiffs due process of the law by the arbitrary and capricious administration of the [CMPA]." Amended Complaint ¶ 85.  Plaintiffs later describe the policy at issue as "Defendants' unconstitutional practice of arbitrary and capricious and unreasonable and

---

[4] Plaintiffs identify the CMPA as the source of their property interest. Amended Complaint ¶ 29.
[5] Plaintiffs reference the Fifth Amendment in ¶ 1(c) of the Amended Complaint.

unlawful delays in [CMPA] administration." Amended Complaint ¶ 11.  Plaintiffs'

Amended Complaint therefore also sufficiently states a claim that a custom or policy of

the municipality caused the violation.  As a result, plaintiffs' § 1983 claim survives

defendants' motion to dismiss.  See Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007).

The Court notes, however, that although plaintiffs originally claimed that either

the CMPA was facially unconstitutional or that it was unconstitutional as applied, only

plaintiffs' "as applied" claim survives the court of appeals' holding in Lightfoot v.

District of Columbia, 448 F.3d 392 (D.C. Cir. 2006).  In Lightfoot, the court held that no

due process claim could be brought upon the theory that an agency must proceed through

rulemaking when purporting to establish standards "that may be may be used to restrict

an administrative agency's decision to terminate or modify a protected liberty or property

interest" as opposed to resolving the issues on a case-by-case basis. Id. at 398.  Because

the court of appeals held that the CMPA was not unconstitutional on its face simply

because it did not contain express written time limits for each step in the process of

administering disability benefits, plaintiffs can now only argue that the delays they

experienced in having their claims processed by defendants were in themselves so

extreme as to constitute a violation of their due process rights.  In other words, plaintiffs'

claim is limited to an argument that the District has an unwritten policy or custom that

violates their rights under the Fifth Amendment.

B.    Plaintiffs' § 1985 Claim

Section 1985 creates a civil cause of action for conspiracy to interfere with an

individual's civil rights.  See 42 U.S.C. § 1985.  The extent of plaintiffs' conspiracy

claim under § 1985 is that "[d]efendants have acted under color of state law and have

maintained through habit, custom, prior practices, rules, and/or regulations, a policy and practice of denying Plaintiffs due process of the law by the arbitrary and capricious administration of the Act" and that "[d]efendant, Jacobs, did conspire with unknown members of the TPA to deprive Plaintiffs of due process of the law." Amended Complaint ¶¶ 90, 91.  A conspiracy is a "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict wrong against or injury upon another, and an overt act that results in damage." Brady v. Livingood, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) (citations omitted).  In order to survive a motion to dismiss, plaintiffs must "set forth more than just conclusory allegations of an agreement." Graves v. United States, 961 F. Supp. 314, 321 (D.D.C. 1997).  Plaintiffs must allege "facts showing the existence or establishment of an agreement." Id.  Because plaintiffs fail to allege any such facts, they therefore fail to state a claim for conspiracy.  See also McManus, 2007 WL 4573442, at *18 (holding *inter alia* that plaintiffs' general allegation that defendants engaged in a conspiracy to deprive plaintiffs of access to administrative remedies relating to their claims for disability compensation was insufficient to state a claim under § 1985).

II.     Defendants' Motion for Summary Judgment

Defendants also move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  See also Celotex Corp. v. Catrett, 447 US 317,

322-23 (1986).

A.      Statement of Undisputed Material Facts

Tara Rogers

1.      Rogers was injured on January 1, 1998. Defs. Mot., Exhibit ("DEX") 2 at 1;

Plaintiff's Opposition to District of Columbia Defendants' Motion to Dismiss

or, in the Alternative, for Summary Judgment, Exhibit ("PEX") 201 at 1.

2.      Rogers was injured on April 27, 1998. PEX 198 at 4.

3.      Rogers was injured on February 4, 2002. PEX 203.

4.      On April 28, 1998, Rogers filed a Form 1 Claimants Form with the D.C.

Disability Compensation Program ("DCP") regarding her January 1, 1998

injury. PEX 198 at 1.

5.      On May 5, 1998, Rogers' supervisor signed a Form 2 Supervisor's Form

indicating that she did not certify that Rogers was in the performance of her

duty at the time of her April 27, 1998, injury. PEX 198 at 4.

6.      On December 31, 1998, Rogers received a Notice of Determination by

Examiner from DCP indicating that her disability compensation claim for

benefits relating to her January 1, 1998, injury had been denied/terminated on

the basis that she had a non-occupational disease. PEX 199.  Rogers was also

told that she could submit a written request for review within thirty days of the

date of the decision. PEX 199.

7.      On August 27, 1999, Rogers received a Final Order of Denial from DCP

regarding her January 1, 1998, injury. PEX 200 at 1.  Her claim was denied on

the basis that she had a non-occupational disease. PEX 200 at 1.  Rogers was

also told that she could submit a written request for a hearing within thirty
days of the date of the decision. PEX 200 at 2.

8.      On October 6, 1999, Rogers requested a formal hearing from DCP regarding
her January 1, 1998, injury. PEX 201 at 1.

9.      On September 18, 2000, Rogers received a <u>Final Compensation Order</u> from
DCP adopting the Hearing Officer's Recommended Compensation Decision,
which recommended that Rogers' claim for disability compensation and
medical benefits relating to her January 1, 1998,[6] injury be granted. PEX 202
at 1, 6.  The parties were informed that any appeals had to be filed in writing
within thirty days of the date of the decision. PEX 202 at 1.

10.     On January 27, 2002, Rogers wrote a letter to Mayor Williams regarding her
inability to obtain health insurance through DCP. PEX 209 at 1.

11.     On May 22, 2002, Rogers received a Form 5 <u>Notice of Controversies</u> stating
that her claim for disability benefits as to her February 4, 2002, injury had
been denied. PEX 203.  Rogers was also informed that she could apply in
writing for reconsideration within thirty days of the date of the decision. PEX
203.

12.     On June 24, 2002, Rogers formally requested reconsideration of the <u>Notice of
Controversion</u> dated May 22, 2002 relating to her February 4, 2002, injury.
PEX 204 at 1.

13.     On July 5, 2002, the D.C. Office of Risk Management ("ORM")
acknowledged receipt of Rogers' request for reconsideration of her disability

---

[6] Although the order itself references claim number OBA No. 2721, which was previously associated with plaintiff's January 1, 1998, injury, the attached decision references an injury date in April of 1998. <u>Compare</u> PEX 201 at 1 <u>with</u> PEX 202.  <u>See</u> <u>also</u> PEX 202 at 3.

compensation benefits relating to her February 4, 2002, injury. PEX 205.

14.     On August 6, 2002, Rogers received notice from DCP that an appointment for

an IME relating to her February 4, 2002, injury had been scheduled for

August 28, 2003.[7] PEX 206.

15.     On September 6, 2002, Rogers received a letter from CLW/CKM, Inc.

indicating that she had been selected to participate in the Skills Equal

Employment Knowledge program. PEX 207 at 1.

16.     On November 7, 2002, Rogers received a letter from Concentra Medical

Examinations indicating that an appointment for an IME relating to her

January 1, 1998 injury had been scheduled for December 23, 2002. PEX 208.

17.     On April 17, 2003, Rogers received a DCP-5 <u>Notice of Intent to Terminate</u>

<u>Disability Compensation Payments</u> from DCP stating that her payments

relating to her January 1, 1998,[8] injury would be terminated on May 18, 2003.

PEX 210 at 1.  Rogers was also told that she could either request

reconsideration by submitting a written request within 10 days of the date of

the notice or appeal to the D.C. Department of Employment Services' Office

of Hearings and Adjudication ("OHA"). PEX 210 at 1-2.

18.     On June 13, 2003, Rogers sent DCP a letter indicating her willingness to

undergo vocational rehabilitation services with regard to her February 4,

2002,[9] injury. PEX 211.

---

[7] Although the letter actually identifies the date of the IME as "2008," based on the date of the letter and date of the injury, the Court presumes it was intended to read "2003."

[8] Previously, the injury occurring on January 1, 1998, was associated with claims number OBA 2721, however, the notice associates the January 1, 1998 injury with claim number 552.  <u>Compare</u> PEX 201 <u>with</u> PEX 210.

[9] In this letter, Rogers associates claims number 552 with her injury of February 4, 2002.

19.     On June 13, 2003, Rogers formally requested reconsideration of the <u>Notice of Controversion</u> dated April 17, 2003, relating to her February 4, 2002, injury. PEX 212 at 1.

20.     On June 18, 2003, ORM acknowledged receipt of Rogers' request for reconsideration of her disability compensation benefits relating to her February 4, 2002, injury. PEX 213.

21.     On July 31, 2003, Rogers submitted an <u>Application for Formal Hearing</u> to OHA relating to her February 4, 2002,[10] injury. PEX 214 at 1-2.

22.     On August 20, 2003, Rogers requested a Pre-Hearing Conference from OHA relating to both her January 1, 1998, injury and her February 4, 2002, injury.[11] PEX 215.

23.     On September 7, 2003, OHA issued an <u>Order Granting Motion for Pre-Hearing Conference</u> relating to claims number 552.[12] PEX 216.

24.     On September 15, 2003, Rogers sent DCP a copy of her report of disability rating, seeking an award for permanent partial disability.[13]

25.     On September 29, 2003, Rogers sent the Office of Corporation Counsel a letter outlining her analysis of the issues presented in relation to her efforts to obtain disability compensation for her injury of January 1, 1998.[14] PEX 218.

26.     On October 1, 2003, Rogers withdrew her application to OHA for a formal

---

[10] Although the cover letter accompanying the application identifies the date of injury as February 4, 2002, the attached notice identifies the date of injury as January 1, 1998.  <u>Compare</u> PEX at 1 <u>with</u> PEX at 3.  Both documents reference claim number 552.

[11] The letter references claim number 552.

[12] It is unclear whether the pre-hearing conference was granted as to Rogers' January 1, 1998, injury, or her February 4, 2002, injury, or both.

[13] The cover letter references her February 4, 2002, injury, and cites claim number 552, but the report itself references her January 1, 1998, injury.

[14] The letter also references claim number 552.

hearing relating to her January 1, 1998, injury on the basis that all contested
issues had been resolved in that DCP had agreed to reinstate Rogers' benefits
including all past due and accrued benefits from May 18, 2003, to the present
and continuing. PEX 219.

27.     On October 2, 2003, Rogers received a letter from Elite Medical Legal
Services confirming that an IME had be scheduled for her on October 16,
2003, regarding her January 1, 1998, injury. PEX 220 at 1.

28.     On October 23, 2003, OHA issued an <u>Order Dismissing Application for
Formal Hearing</u> based on the representations in Rogers' October 1, 2003,
letter.[15] PEX 221.

29.     On October 29, 2003, Rogers sent DCP a copy of the October 2, 2003, written
agreement between the parties relating to her February 4, 2002,[16] injury. PEX
222 at 1.

30.     On January 5, 2004, DCP issued a Form 5 <u>Compensation Determination by
Examiner</u> reducing Rogers' benefits as to her January 1, 1998,[17] injury. PEX
223.

31.     On April 2, 2004, Rogers received a Form 5 <u>Compensation Determination by
Examiner</u> from DCP stating that her disability compensation claim for her
January 1, 1998,[18] injury had been approved. DEX 2 at 1-2; PEX 224 at 1-2.
Rogers was also told that she could apply in writing for reconsideration of the
decision within 30 dates from the date of the decision. DEX 2 at 1; PEX 224

---

[15] The order references claim number 552.
[16] The letter references claim number 552.
[17] The determination references claim number 552.
[18] The determination references claim number 552.

at 1-2.

32.     On April 9, 2004, Rogers formally requested reconsideration by DCP of the

April 2, 2004, compensation determination.[19] PEX 225 at 1.

33.     On April 12, 2004, Rogers formally requested reconsideration of DCP's April

2, 2004, determination.[20] PEX 226.

34.     On July 23, 2004, Rogers received a letter from the D.C. Office of Personnel

("OP") regarding her January 1, 1998, injury, in which she was asked whether

she planned and was able to return to her position. PEX 228.

35.     On June 9, 2006, Rogers received a Form NOC Notice of Determination

Regarding Permanent Partial Disability Benefits relating to her January 1,

1998, injury that indicated that an overpayment of benefits had occurred. PEX

229 at 1-2.  Rogers was also told that she could either 1) request

reconsideration by submitting the Request for Reconsideration Form and

supporting documentation within thirty days of the date of the notice, or 2)

appeal the notice to OHA. PEX 229 at 1.

36.     On June 16, 2006, Rogers received a Form DCORM-1 Final Decision on

Reconsideration from DCP as to her injury of January 1, 1998, indicating that

that April 2, 2004, determination as to Rogers' disability was being upheld but

that clarification regarding her desire to receive permanent partial disability

benefits was required. PEX 230 at 1-2.  Rogers was also told that she could

file for a hearing with OHA by July 15, 2006, thirty days from the date of the

---

[19] The April 9, 2004, letter refers to Rogers' February 4, 2002, injury, while the April 2, 2004,
determination she seeks reconsideration of references her January 1, 1998, injury.  Both documents
reference claim number 552.
[20] The April 12, 2004, letter refers to Rogers' February 4, 2002, injury, while the April 2, 2004,
determination refers to her January 1, 1998, injury.  Both documents reference claim number 552.

decision. PEX 230 at 1-2.

<u>Patricia Hayden</u>

1.      Hayden was injured on February 2, 1996. PEX 78 at 1 n.1.

2.      Hayden was injured on February 9, 1996. PEX 54 at 1.

3.      Hayden was injured on February 14, 1996. PEX 53.

4.      Hayden was injured on November 30, 1998. PEX 70.

5.      Hayden was injured on December 15, 1999. PEX 78 at 1.

6.      On December 10, 2000, Hayden filed a claim for recurrence of her disability relating to her February 9, 1996, injury. PEX 56.

7.      On March 28, 2001, Hayden sent a letter to DCP requesting information about the status of her October 2000 claim for recurrence of her disability relating to her February 14, 1996, injury. PEX 53.

8.      On May 9, 2001, Hayden received a <u>Notice of Determination by Examiner</u> from DCP stating that her disability compensation claim for her February 9, 1996, injury was being terminated. PEX 54 at 1.  Hayden was informed that she could submit a written request for review of the decision with thirty days from the date of the decision. PEX 54 at 1.

9.      On October 17, 2001, Hayden sent a letter to DCP requesting information about the status of her claim for recurrence of her disability relating to her February 9, 1996, injury, which was filed on December 10, 2000. PEX 56 at 1.

10.     On July 18, 2001, Hayden formally requested reconsideration of the <u>Notice of Determination</u> relating to her February 14, 1996, injury. PEX 55.

11.     On January 23, 2002, Hayden sent a letter to DCP forwarding a copy of her

July 18, 2001, request for reconsideration relating to her February 9, 1996,

injury. PEX 57 at 1.

12.     On January 25, 2002, Hayden received a <u>Final Order</u> from DCP stating that

her request for reconsideration relating to her February 9, 1996, injury had

been denied as untimely because it was not filed within thirty days of the

decision. PEX 58.

13.     On January 30, 2002, Hayden filed an application for a formal hearing and

final order of denial relating to her February 9, 1996, injury. PEX 59.

14.     On May 31, 2002, DCP issued a <u>Final Compensation Order</u> denying Hayden's

claim for benefits relating to her February 9, 1996, injury. PEX 60 at 4.

15.     On December 10, 2002, the D.C. Department of Employment Services'

("DOES") Office of the Director issued a <u>Decision and Remand Order of the</u>

<u>Director</u> reversing the May 31, 2002, <u>Final Compensation Order</u> denying

Hayden's claim for benefits relating to her February 9, 1996, injury. PEX 60

at 4.  Both parties were informed that they could file an application for review

with the D.C. Court of Appeals within 30 days of the date of the decision.

PEX 60 at 5.

16.     On January 23, 2003, Hayden sent a letter to DCP requesting a breakdown of

their calculations regarding her disability award relating to her November 30,

1998, injury. PEX 70.

17.     On August 6, 2003, the D.C. Court of Appeals issued an <u>Order</u> granting the

District's consent motion to dismiss its petition for review of the December

10, 2002, decision relating to her February 9, 1996,[21] injury. PEX 61.

18.     On August 11, 2003, Hayden forwarded DCP a copy of the D.C. Court of
        Appeal's August 6, 2003, decision and requested payment of temporary total
        disability compensation wage replacement benefits relating to her February 9,
        1996, injury. PEX 62 at 1.

19.     On September 15, 2003, Hayden sent DCP various completed forms in
        support of her request for wage replacement benefits relating to her February
        9, 1996, injury. PEX 63.

20.     On October 23, 2003, Hayden sent DCP copies of her 2000 and 2002 income
        tax forms in support of her request for temporary total disability compensation
        relating to her February 9, 1996, injury. PEX 64.

21.     On November 7, 2003, Hayden sent DCP copies of social security documents
        in support of her claim for disability benefits relating to her February 9, 1996,
        injury. PEX 65.

22.     On January 7, 2004, Hayden sent DCP a copy of her IRS statements of
        income for 2000, 2001, and 2002, in support of her claim for benefits relating
        to her February 9, 1996, injury. PEX 67, PEX 68.

23.     On January 21, 2004, Hayden sent DCP a letter requesting a breakdown of
        their calculations regarding her disability award for her February 9, 1996,
        injury. PEX 69.

24.     On February 2, 2004, Hayden sent DCP a letter challenging the amount that
        she had been awarded in temporary total disability compensation benefits

---

[21] Although the order does not identify any date of injury, the docket number is the same as that on the
December 10, 2002, decision, which does identify the date of injury as February 9, 1996.  See PEX 60 at 1.

relating to her February 9, 1996, injury. PEX 72.

25.     On February 3, 2004, Hayden received a letter from DCP explaining the calculations that were done to arrive at the total sum of her award relating to her February 9, 1996, injury.[22] PEX 73.

26.     On February 9, 2004, Hayden sent DCP a letter requesting additional information about their calculations regarding the disability award for her February 9, 1996, injury. PEX 74.

27.     On February 20, 2004, Hayden formally requested reconsideration of the calculations contained in DCP's letter of February 3, 2004, which contained a detailed breakdown of the disability award for her February 9, 1996, injury. DEX 3 at 2; PEX 75.

28.     On February 24, 2004, DCP acknowledged receipt of Hayden's request for reconsideration of her disability compensation benefits relating to her February 9, 1996, injury. PEX 76.

29.     On March 24, 2004, Hayden filed <u>Petitioner's Suggestions in Support of Petition in Mandamus</u> with the D.C. Court of Appeals relating to her February 9, 1996, injury.[23] PEX 78 at 1-14.

30.     On April 16, 2004, the D.C. Court of Appeals issued an <u>Order</u> denying without prejudice Hayden's petition for writ of mandamus relating to her

---

[22] Although the letter does not identify a date of injury, the date of the letter and its reference to a payment of $33,203.88 clearly indicates that it was written in response to Hayden's February 2, 2004, letter challenging the DCP's compensation payment calculations relating to her injury of February 9, 1996.  <u>See</u> PEX 72.

[23] Although the petition references an injury date of February 2, 1996, and a recurrence of injury date of December 15, 1999, based on the use by the D.C. Court of Appeals of the claims number used previously to reference Hayden's February 9, 1996, injury, the petition also references the February 9, 1996, injury. <u>See</u> PEX 79; PEX 75 at 1.

February 9, 1996.[24] PEX 79.

31.     Hayden was injured on November 30, 2005. DEX 3 at 1; PEX 80.

32.     On April 24, 2007, Hayden received a Form DCORM-1 <u>Final Decision on
        Reconsideration</u> from DCP indicating that her disability compensation claim
        for her November 30, 2005,[25] injury had been reconsidered and that she was
        being awarded additional monies. PEX 80 at 2; DEX 3 at 2.  Hayden was also
        told that she had thirty days, or until May 23, 2007, to request a hearing with
        OHA. PEX 80 at 1-3; DEX 3 at 1-3.

<u>George Morgan</u>

1.      Morgan was injured on May 10, 1983. DEX 18; PEX 153.

2.      On December 18, 1998, Morgan received a letter from CorVel scheduling an
        IME for January 5, 1999. PEX 154 at 3.

3.      On October 17, 2000, Morgan received a <u>Notice of Determination by
        Examiner</u> from DCP adjusting his benefits to reflect that he had been found to
        be capable of returning to light duty work. DEX 18; PEX 153.  Morgan was
        informed that he could submit a written request for a review within 30 days of
        the date of the adjustment. DEX 18; PEX 153.

4.      On November 14, 2000, Morgan sent two letters indicating his dissatisfaction
        with his compensation adjustment. PEX 154 at 1, 2.

5.      On December 12, 2000, Morgan sent a letter to DCP requesting
        reconsideration of his workers' compensation decision. PEX 155 at 1

---

[24] Although the order does not reference any date of injury, it does use the same claim number used previously to reference Hayden's February 9, 1996, injury.  <u>Compare</u> PEX 79 <u>with</u> PEX 75 at 1.
[25] Although the decision references an injury date of November 30, 2005, in its caption, the body of the decision discusses the payment to Hayden of $33,203.88, an amount which the record earlier indicated was made in reference to Hayden's injury of February 9, 1996.

6.      On January 3, 2001, Morgan formally requested adjustment of his lost wage-
earning capacity based upon a change of circumstances. PEX 156.

7.      On June 21, 2001, Morgan sent DCP a letter inquiring about the status of his
claim filed January 3, 2001. PEX 157.

8.      On September 3, 2003, Morgan received a letter from DCP requesting that he
complete a claim for continuing benefits form, a request for copy of transcript
of tax form, and an election of benefits form. PEX 158.

9.      On March 19, 2004, Morgan filed a formal claim for workers' compensation
benefits based upon a change of circumstances. PEX 159.

10.     On April 30, 2007, Morgan received a letter from ORM asking that within ten
days he confirm that no deductions were being withheld from his bi-weekly
compensation check for health insurance and/or life insurance. PEX 160.

11.     On August 3, 2007, Morgan received a <u>Final Decision on Reconsideration</u>
from DCP upholding the original decision to reduce his benefits. PEX 161 at
1-3.  Morgan was also told that he had thirty days, or until September 1, 2007,
to file for a hearing with OHA. PEX 161 at 1, 3.

<u>Denise Downing</u>

1.      Downing was injured on October 12, 1992. PEX 164 at 1.

2.      On August 31, 2000, Downing received a <u>Final Compensation Order</u> from
DOES, which adopted the Hearing Officer's Recommended Compensation
Decision to: 1) grant Downing's request for past due compensation benefits
based upon an erroneous application for her weekly wage, 2) grant Downing's
request for reinstatement of temporary total disability benefits effective May

17, 1997, and 3) grant Downing's request for payment of medical expenses

relating to her low back strain but not her carpal tunnel syndrome. PEX 162 at

1, 10.  Both parties were told that they had thirty days from the date of the

decision to file a Petition for Review. PEX 162 at 1.

3.    On December 11, 2000, Downing sent a letter to DCP requesting an

accounting and/or reconciliation of benefits for the previously issued

Compensation Order. PEX 164 at 1.

4.    On January 4, 2001, Downing sent another letter to DCP requesting a

reconciliation of her compensation case. PEX 166 at 1.

5.    On March 28, 2001, Downing sent a letter to DCP requesting the CA-25

representing DCP's payment of benefits to her. PEX 167 at 1.

6.    On June 12, 2001, Downing formally requested benefits from DCP. PEX 169.

7.    On December 12, 2002, Downing requested a formal hearing from OHA. PEX

170 at 1.

8.    On December 20, 2002, Downing received an <u>Order Granting Pre-Hearing</u>

<u>Conference</u> from OAH that set a pre-hearing conference for January 24, 2003.

PEX 21 at 1; DEX 7 at 2.

<u>Juanita Irving</u>

1.    Irving was injured on May 31, 2001. DEX 8 at 1; PEX 137

2.    On June 21, 2001, Irving received a <u>Notice of Acceptance</u> from DCP

acknowledging the filing of her disability compensation claim. PEX 137.

3.    On August 28, 2001, Irving received a <u>Notice of Determination by Examiner</u>

from DCP notifying her that her disability compensation claim for benefits

had been suspended. PEX 138.  Irving was also informed that she could submit a written request for review of the decision within thirty days of the decision. PEX 138.

4.      On September 25, 2001, Irving submitted a written request for review of the DCP decision dated August 28, 2001. PEX 139.

5.      On September 11, 2002, Irving sent DCP a letter seeking a response to her request for reconsideration and also requesting wage replacement benefits. PEX 140.

6.      On September 16, 2002, Irving received a written acknowledgment from ORM regarding her request for reconsideration. PEX 141.

7.      On December 12, 2002, Irving sent OHA a letter seeking a response to her request for a hearing. PEX 142.

8.      On December 20, 2002, Irving received an <u>Order Granting Pre-Hearing Conference</u> from OAH that set a pre-hearing conference for January 24, 2003. PEX 21 at 1; DEX 7 at 2.

9.      On August 8, 2003, Irving filed an application with OHA for a formal hearing. PEX 143 at 2-3.

10.     On August 26, 2003, Irving received a letter from OHA stating that OHA lacked jurisdiction over her claim because a <u>Final Order (Denial of Award Order)</u> had not yet been issued by the Disability Compensation Manager. PEX 144.

11.     On September 3, 2003, Irving filed <u>Claimant's Application for Review</u> with the Labor Standards Office ("LSO"), Office of the Director. PEX 145 at 2.

12.     On November 25, 2003, DOES' Office of the General Counsel acknowledged

        Irving's September 10, 2003, filing in its <u>Notice of Application for Review</u>

        <u>Filed</u>. PEX 146.

13.     On December 1, 2003, Irving received a <u>Reconsideration Final Order</u> from

        DCP stating that the decision to suspend her compensation payments had been

        reversed and referred back to the claims adjuster. DEX 15; PEX 147.

14.     On December 8, 2003, Irving withdrew her Application for Review from

        DOES citing a resolution of contested issues. PEX 148; PEX 8.

15.     On February 24, 2004, Irving sent DCP a letter requesting payment of her

        compensation benefits and an explanation of the calculations. PEX 149.

16.     On March 1, 2004, Irving sent DCP a letter requesting past due and accrued

        wage replacement benefits. PEX 150.

17.     On March 24, 2004, Irving filed <u>Petitioner's Suggestions in Support of</u>

        <u>Petition in Mandamus</u> with the D.C. Court of Appeals. PEX 151 at 1-14.

18.     On April 16, 2004, the D.C. Court of Appeals issued an Order denying

        Irving's petition without prejudice to renew. PEX 152.

<u>James Winstead</u>

1.      Winstead was injured on July 12, 1990, September 14, 1991, September 19,

        1992, and January 21, 1994. PEX 87.

2.      On December 7, 1999, Winstead sent DCP a letter requesting authorization

        for surgery relating to his January 21, 1994, injury. PEX 81.

3.      On May 15, 2000, Winstead received a letter from CorVel indicating his

request for pre-certification for surgery relating to his January 21, 1994,[26]

injury could not be accommodated because a surgery date had not been

provided. PEX 82.

4.    On October 17, 2000, Winstead received a Pre-Certification authorization

from CorVel for an MRI relating to his January 21, 1994,[27] injury. PEX 83.

5.    On November 16, 2001, Winstead requested a full and final lump-sum

settlement of his disability compensation award for permanent impairment

relating to the injuries that occurred on all four dates. PEX 84.

6.    On December 5, 2001, Winstead sent DCP a formal request for benefits and

indicated his interest in a full and final settlement relating to the injuries that

occurred on all four dates. PEX 85 at 1.  Winstead also attached supporting

medical documentation. PEX 85 at 2-3.

7.    On January 9, 2002, DCP sent Winstead's physicians letters requesting all of

his medical reports and records so that they could evaluate his claims relating

to the injuries that occurred on all four dates. PEX 86.

8.    On March 1, 2002, Winstead sent a letter to DCP with an executed medical

authorization and release of confidential information form relating to the

injuries that occurred on all four dates. PEX 87.

9.    On March 27, 2002, Winstead received a letter from DCP indicating that they

had not yet received the medical records relating to all four injuries that they

had requested of Winstead's physicians. PEX 88 at 1.

---

[26] Although this document does not state that it is in reference to plaintiff's January 21, 1994 injury, the claim number that is referenced in the letter is the same one that appears on the letter sent by Winstead requesting pre-certification.  Compare PEX 81 with PEX 82.

[27] See footnote 26 above.

10.     On October 2, 2002, Winstead received a letter from DCP confirming that an IME had been scheduled for October 28, 2002, relating to the injury that occurred on January 21, 1994. PEX 89.

11.     On November 13, 2002, Winstead sent DCP a letter following his attendance at the scheduled IME and requested a copy of the IME report and a determination regarding his claim for benefits relating to the injuries that occurred on all four dates. PEX 90 at 1.

12.     On December 2, 2002, Winstead requested a Notice of Determination relating to the injuries that occurred on all four dates. PEX 91 at 1.

13.     On December 11, 2002, Winstead received a letter from DCP indicating that prior to issuing a Notice of Determination, it needed a copy of the DCP 5 Acceptance letter for the injuries that occurred on all four dates. PEX 92.

14.     On December 12, 2002, Winstead submitted an application requesting a formal hearing from OHA as to the injuries that occurred on all four dates. PEX 93.

15.     On December 20, 2002, Winstead received an Order Granting Pre-Hearing Conference from OAH that set a pre-hearing conference for January 24, 2003. PEX 21 at 1; DEX 7 at 2.

16.     On April 16, 2003, Winstead submitted additional information relating to the injuries that occurred on all four dates. PEX 94 at 1-10.

17.     On May 22, 2003, Winstead submitted additional information relating generally to his claim for compensation for the injuries that occurred on all four dates and specifically to the income he was earning at the time of his

January 21, 1994 injury. PEX 95.

18.     On July 10, 2003, Winstead received a Form 5 <u>Compensation Determination</u>
        <u>by Examiner</u> from DCP stating that his disability compensation claim for the
        injuries occurring on all four days[28] would be awarded at the rate due a 15%
        permanent partial impairment. PEX 96 at 2.  Winstead was also told that he
        could apply in writing for reconsideration of the decision within 30 dates from
        the date of the decision. PEX 96 at 2.

19.     On July 18, 2003, Winstead sent DCP a letter relating to the injuries that
        occurred on all four dates in acceptance of their offer of 15% permanent
        impairment of his left upper extremity. PEX 96 at 5.

20.     On August 13, 2003, Winstead submitted an application requesting a formal
        hearing relating to the injuries that occurred on all four dates. PEX 97.

21.     On August 26, 2003, Winstead received a letter from OHA relating to the
        injuries that occurred on all four dates stating that OHA lacked jurisdiction
        over Winstead's claim since a <u>Final Order (Denial of Award Order)</u> had not
        yet been issued by the Disability Compensation Manager. PEX 98 at 4; PEX
        144.

22.     On September 3, 2003, Winstead submitted <u>Claimant's Application for</u>
        <u>Review</u> relating to the injuries that occurred on all four days to DOES. PEX
        98 at 1-3.

23.     On September 3, 2003, Winstead formally requested reconsideration of the
        <u>Compensation Notice of Determination by Examiner</u> relating to the injuries

_____

[28] Although the determination identifies only the injury that occurred on January 21, 1994, it also references
the IME performed by Dr. Smith on October 28, 2002, which related to the injuries that occurred on all
four days.  <u>See</u> PEX 90 at 1.

that occurred on all four days. PEX 99.

24.  On September 10, 2003, Winstead filed <u>Claimant's Application for Review</u> relating to the injuries that occurred on all four days with LSO's Office of the Director. PEX 98 at 5-9; PEX 101.

25.  On September 12, 2003, DCP acknowledged receipt of Winstead's request for reconsideration relating to the injuries that occurred on all four days.[29] PEX 100.

26.  On February 20, 2004, Winstead filed a <u>Petition for Review of a decision of the Director, District of Columbia Department of Employment Services</u> with the D.C. Court of Appeals on the basis that the Director failed to issue a decision within 45 days of Winstead's Application for Review, filed August 26, 2003, relating to the injuries that occurred on all four days.[30] PEX 26.

27.  On March 3, 2004, the D.C. Court of Appeals issued an <u>Order</u> directing Winstead[31] to show cause within 20 days why his petition for review of the decision issued on August 26, 2003, relating to the injuries that occurred on all four dates[32] should not be dismissed for lack of jurisdiction since it was taken from a non-final and non-appealable decision. PEX 102.

28.  On March 23, 2004, Winstead filed <u>Petitioners' Response to Show Cause Order</u>, relating to the injuries that occurred on all four days, with the D.C.

---

[29] Although the letter itself does not identify any specific dates of injury, it references the claim number assigned by ORM to Winstead's claim as to the injuries that occurred on all four dates.  <u>Compare</u> PEX 101 <u>with</u> PEX 98 at 1.

[30] Although the petition does not identify any specific dates of injury, it references the decision made on August 26, 2003, which relates to the injuries that occurred on all four days.  <u>See</u> PEX 98 at 4.

[31] The show cause order issued by the D.C. Court of Appeals on March 3, 2004, was directed <i>inter alia</i> at both Winstead and Louis Beale, another plaintiff in this case.

[32] Although the letter does not identify any specific dates of injury, it references the decision made on August 26, 2003, which relates to the injuries that occurred on all four days.  <u>See</u> PEX 98 at 4.

Court of Appeals. PEX 103.

29.     On March 30, 2004, the D.C. Court of Appeals issued an <u>Order</u> denying

        Winstead's petition relating to the injuries that occurred on all four days[33] for

        lack of jurisdiction. PEX 27.

30.     On April 9, 2004, Winstead's counsel sent a letter[34] to D.C. Councilmember

        Vincent Orange requesting that the D.C. Merit Personnel Act be amended to

        include express time frames within which the Act's legislatively-mandated

        administrative functions had to be executed. PEX 28 at 1.

31.     On August 2, 2006, Winstead received a Form DCORM-1 <u>Final Decision on</u>

        <u>Reconsideration</u> from DCP stating that his request for reconsideration relating

        to the injuries that had occurred on all four days[35] had been denied as

        untimely because it was not filed within thirty days of the decision. PEX 104

        at 1.

<u>Louis Beale</u>

1.      Beale was injured on August 13, 2001. PEX 1 at 1.

2.      On August 15, 2001, Beale filed his First Report of Injury or Occupational

        Disease with DCP. PEX 1 at 1.

3.      On August 30, 2001, Beale received a <u>Notice of Acceptance</u> from DCP

        indicating that his disability compensation claim had been accepted. PEX 2.

4.      On November 14, 2001, Beale wrote a letter to DCP complaining that,

---

[33] Although the order does not identify any specific dates of injury, it references Winstead's response to the show cause order, which relates to the injuries that occurred on all four days. <u>See</u> PEX 103.

[34] Although the letter does not identify individual plaintiffs within the body of the letter, it identifies them at the end of the letter and references the appeal filed *inter alia* by both Winstead and Beale. <u>Compare</u> PEX 28 <u>with</u> PEX 26.

[35] Although the decision references only the injury date of January 1, 1994, the request for reconsideration it resolves, which was received on September 12, 2003, was one that related to the injuries that occurred on all four days. <u>See</u> PEX 100; PEX 101; PEX 98 at 1.

although his claim had been approved, he had yet to receive any

compensation. PEX 3.

5.      On November 29, 2001, Beale received a Form 5 <u>Compensation Acceptance</u>

<u>Order</u>[36] from DCP stating that his disability compensation claim had been

accepted. PEX 4.

6.      On December 3, 2001, Beale received a Form 5 <u>Compensation Acceptance</u>

<u>Order</u> from DCP stating that his disability compensation claim had been

accepted. PEX 5.

7.      On December 7, 2001, Beale received a letter from Med-Eval confirming that

an IME had been scheduled for him for December 20, 2001. PEX 6.

8.      On January 29, 2002, Beale received a Form 5 <u>Final Compensation</u>

<u>Denial/Termination Order</u> from DCP indicating that his disability

compensation claim was being terminated because he had fully recovered

from his injury and was able to return to work without any restrictions. PEX 7.

Beale was also told that he could apply in writing for reconsideration of the

decision within 30 dates from the date of the decision. PEX 7.

9.      On February 13, 2002, Beale submitted a written request to DCP for a hearing

for reconsideration of the decision to terminate his disability compensation.

PEX 8.

10.     On February 21, 2002, Beale received a response from DCP to his February

13, 2002, letter,[37] which indicated that further information (in the form of a

---

[36] Although the order references an injury date of October 25, 2001, it is clear from the identification of Beale's injury by claim number 14409 that the injury referenced in the letter is the one which occurred on August 13, 2001.  <u>Compare</u> PEX 4 <u>with</u> PEX 2.

[37] Although the letter does not indicate the date of Beale's injury nor does it reference a claim number,

letter explaining why he thought he was entitled to further benefits and

supporting documentation) had to be submitted within thirty days of the final

termination order. PEX 9.

11.     On March 19, 2002, Beale submitted additional medical documentation to

DCP and indicated that he was still under a doctor's care.[38] PEX 10.

12.     On March 29, 2002, Beale received a <u>Final Order</u> from DCP indicating that

his disability compensation claim was being referred back to the claims

adjuster for further consideration. PEX 11 at 1-2.

13.     On April 29, 2002, Beale requested a formal hearing from OHA. PEX 12 at 1.

14.     On June 3, 2002, Beale moved to have his application for a formal hearing

dismissed on the ground that the case had been referred to the claims adjuster

for further determination of his medical status. DEX 11 at 1.

15.     On June 11, 2002, Beale was again informed by DCP that his case had been

referred back to the claims adjuster. PEX 13 at 1.  Beale was also asked to

submit any necessary medical documentation within ten business days. PEX

13 at 1.

16.     On June 20, 2002, Beale received an <u>Order Dismissing Application for</u>

<u>Formal Hearing without Prejudice</u>[39] from OHA in response to his June 3,

2002, motion on the basis that the case had been referred back to the claims

adjuster for further consideration and therefore OHA lacked jurisdiction. PEX

Beale's February 13, 2002, letter, to which DCP's letter responds, references the August 13, 2001, date of injury.

[38] Although the letter does not identify the date of Beale's injury, it references claims number 1188, which, in addition to claims number 14409, has been used in reference to his August 13, 2001, injury.  <u>Compare</u> PEX 5 <u>with</u> PEX 7.

[39] Although the order does not identify the date of Beale's injury, it references claims number 14409, which has been used in reference to his August 13, 2001, injury.  <u>Compare</u> PEX 14 <u>with</u> PEX 5.

14; DEX 11 at 1.

17.     On July 16, 2002, Beale received a <u>Compensation Denial/Termination Order</u> from DCP indicating that his disability compensation claim was being denied because his medical condition was not causally related to the injury of August 13, 2001. PEX 15.  Beale was informed that he could submit a written request for reconsideration within thirty days from the date of the decision. PEX 15.

18.     On July 25, 2002, Beale received a letter[40] from the D.C. Department of Mental Health's Community Services Agency ("CSA") indicating that, because his benefits had been terminated on January 29, 2002, he could either return to duty immediately or contact the agency to request extended leave. PEX 16 at 3.

19.     On July 31, 2002, Beale responded by letter[41] to CSA's July 25, 2002, letter and indicated his desire for a hearing. PEX 16 at 6.

20.     On August 14, 2002, Beale submitted a formal request to DCP for reconsideration of DCP's July 16, 2002, denial of benefits. PEX 17 at 1.

21.     On August 28, 2002, Beale received an acknowledgment of his request for reconsideration of his disability compensation payments. PEX 18.

22.     On October 24, 2002, Beale's attorney sent a letter to DCP complaining that, although Beale had filed a formal request for reconsideration, no decision had been rendered. PEX 19.

23.     On December 12, 2002, Beale's attorney sent a letter to OHA complaining that Beale had been without benefits and a hearing since February 2002. PEX

---

[40] The letter does not contain a reference to either Beale's date of injury or to a claim number.
[41] Beale's letter does not reference either his date of injury or a claims number.

20.

24.     On December 20, 2002, Beale received an <u>Order Granting Pre-Hearing</u>

        <u>Conference</u> from OAH and setting the pre-hearing conference for January 24,

        2003. PEX 21 at 1; DEX 7 at 2.

25.     On July 31, 2003, Beale submitted an application to OHA for a formal

        hearing. PEX 22.

26.     On August 26, 2003, Beale received a letter from OHA stating that OHA

        lacked jurisdiction over Beale's claim because a <u>Final Order (Denial of Award</u>

        <u>Order)</u> had not yet been issued by the Disability Compensation Manager. PEX

        23; PEX 144.

27.     On September 3, 2003, Beale filed <u>Claimant's Application for Review</u> with

        the Department of Employment Services Labor Standards Office of the

        Director. PEX 24 at 2.

28.     On November 25, 2003, Beale received an acknowledgment from LSO's

        Office of the General Counsel that his Application for Review had been filed.

        PEX 25.

29.     On February 20, 2004, Beale filed a <u>Petition for Review of a Decision of the</u>

        <u>Director, District of Columbia Department of Employment Services</u> with the

        D.C. Court of Appeals on the basis that the Director failed to issue a decision

        within 45 days of Beale's Application for Review. PEX 26.

30.     On March 3, 2004, the D.C. Court of Appeals issued an <u>Order</u> directing

        Beale[42] to show cause within 20 days why his petition for review should not

---

[42] The show cause order issued by the D.C. Court of Appeals on March 3, 2004, was directed *inter alia* at
both Winstead and Beale.

be dismissed for lack of jurisdiction since it was taken from a non-final and non-appealable decision. PEX 102.

31.    On March 23, 2004, Beale filed <u>Petitioners' Response to Show Cause Order</u> with the D.C. Court of Appeals. PEX 103.

32.    On March 30, 2004, the D.C. Court of Appeals issued an <u>Order</u>[43] denying Beale's petition for lack of jurisdiction. PEX 27.

33.    On April 9, 2004, Beale's counsel sent a letter[44] to Councilman Vincent Orange requesting that the D.C. Merit Personnel Act be amended to include express time frames within which the Act's legislatively-mandated administrative functions had to be executed. PEX 28 at 1.

34.    On May 24, 2006, Beale received a Form DCORM-1 <u>Final Decision on Reconsideration</u> from DCP indicating that his Request for Reconsideration of Notice of Determination had been denied as untimely because it was not filed within thirty days of the decision. PEX 29 at 4.  Beale was informed that, while he could not appeal the decision, he did have thirty days or until June 22, 2006, within which to file for a hearing with OHA. PEX 29 at 5.

35.    On June 2, 2006, Beale received a Form DCORM-1 <u>Final Decision on Reconsideration</u> from DCP indicating that his Request for Reconsideration of Notice of Determination had been denied as untimely because it was not filed within thirty days of the decision. PEX 29 at 1.  Beale was informed that,

---

[43] Although the order does not reference either Beale's date of injury or a claims number, it does reference docket number 19-03, which, although it not the docket number associated with Beale's claim, is one of the three docket numbers listed on Beale's original petition.  Docket number 20-03 is actually the corresponding number to Beale's claim number 1188.  <u>Compare</u> PEX 27 <u>with</u> PEX 25 <u>and</u> PEX 26.

[44] Although the letter does not identify individual plaintiffs within the body of the letter, it both identifies them at the end of the letter and references the appeal filed *inter alia* by both Winstead and Beale. <u>Compare</u> PEX 28 <u>with</u> PEX 26.

while he could not appeal the decision, he did have thirty days, or until July 1,

2006, within which to file for a hearing with OHA. PEX 29 at 2.

<u>Patricia Newby</u>

1.      Newby was injured on November 30, 1998. PEX 48.

2.      Newby was injured on April 2, 2001. DEX 12 at 1; PEX 43.

3.      On April 7, 2001, Newby filed a <u>First Report of Injury or Occupational</u>

<u>Disease</u> with DCP relating to her April 2, 2001, injury. PEX 43.

4.      On June 24, 2002, Newby received a Form 5 <u>Compensation Determination by</u>

<u>Examiner</u> from DCP denying her claim for disability compensation relating to

her April 2, 2001, injury. PEX 44 at 1-2.  Newby was informed that she could

apply in writing for reconsideration within thirty days from the date of the

decision. PEX 44 at 1.

5.      On June 28, 2002, Newby received an acknowledgment from ORM that her

request for reconsideration of the decision relating to her April 2, 2001, injury

had been received. PEX 45.

6.      On August 2, 2002, Newby received a <u>Final Order</u> from DCP indicating that

her request for reconsideration of the decision relating to her April 2, 2001,

injury had been reviewed and that her case was being referred back to the

claims adjuster. PEX 46 at 1-4; DEX 12 at 1-4.  The claims adjuster was

authorized to: 1) have Newby evaluated by a pain management specialist and

to request a psychological evaluation, and 2) determine the amount of a

previous overpayment to Newby and not reinstate wage payments until the

overpayment was resolved. PEX 46 at 3-4; DEX 12 at 3-4.  The order further

indicated that it was reasonable to conclude that the injury that Newby

suffered on April 2, 2001, was actually a recurrence of the injury that first

occurred on November 30, 1998. PEX 46 at 2.

7.      Finally, the order indicated that Newby was capable of working and therefore

not entitled to future loss wage payments. PEX 46 at 4; DEX 12 at 4.

8.      On August 9, 2002, Newby received a letter from DCP scheduling her for an

IME relating to her April 2, 2001, injury for August 16, 2002. PEX 47.

9.      On January 23, 2004,[45] Newby formally requested permanent partial disability

compensation benefits relating to her November 30, 1998 injury. PEX 48 at 1.

Newby submitted a letter from a physician in support of her request.  The

letter referenced both a November 1998, injury and an April 2002, injury.

PEX 48 at 2.  The letter also indicates that Newby was injured in 2001. PEX

48 at 2.

10.     On January 23, 2004,[46] Newby sent DCP copies of invoices for outstanding

medical bills relating to her November 30, 1998, injury. PEX 49.

11.     On June 25, 2004, Newby submitted medical documentation in support of her

request for past temporary partial disability relating to her November 30,

1998, injury. PEX 50 at 1.

12.     On June 25, 2004, Newby received a letter from DCP denying her treating

physician's request for physical therapy on the basis that Newby's request for

compensation benefits had been previously denied on June 24, 2002.[47] PEX

---

[45] The original document identifies the date of the letter as 2003; that was crossed out by hand and replaced with "2004."
[46] Id.
[47] The letter does not indicate the date of injury to which it refers.

51.

13.     On June 28, 2004, Newby received a letter (through her attorney) from DCP

        indicating that she was not eligible for any compensation due to wage loss in

        her present employment.[48] PEX 52.

                                    Sheila Owens

1.      Owens was injured on February 17, 2004. PEX 189 at 1.

2.      On February 18, 2004, Owens filed a First Report of Injury or Occupational

        Disease. PEX 189 at 1.

3.      On March 9, 2004, Owens received a Form 5 Notice of

        Controversion/Termination Order from DCP indicating that they were

        awaiting the receipt of medical reports before making a determination on her

        claim. PEX 190 at 1.  Owens was also told that she could apply in writing for

        reconsideration within thirty days of the date of the decision. PEX 190 at 1.

4.      On April 9, 2004, Owens sent DCP a letter formally requesting

        reconsideration of the Notice of Controversion/Termination dated March 9,

        2004. PEX 192 at 1.

5.      On April 23, 2004, Owens received a letter from DCP acknowledging receipt

        of her request for reconsideration. PEX 193.

6.      On May 21, 2004, Owens faxed DCP medical records relating to her accident

        on February 17, 2004. PEX 194 at 1.

7.      On July 19, 2004, Owens received a letter from the D.C. Department of

        Mental Health ("DMH") stating that the Department of Nursing does not

---

[48] The letter does not indicate the date of injury to which it refers.

assign light duty to any staff whose primary function is direct patient care
because of the risk of injury inherent in the position. PEX 195.

8.      On April 19, 2006, Owens received a Form DCORM-1 <u>Final Decision on
Reconsideration</u> from DCP. PEX 196.  DCP concluded that her claim should
have been accepted and therefore remanded the claim to the adjuster. PEX
196 at 2.

9.      On May 19, 2006, Owens received a Form NOC <u>Notice of Determination
Regarding Original Claim for Compensation</u> from DCP indicating that her
claim had been accepted. PEX 197 at 1.  Owens was also told that she could
request reconsideration of the determination or appeal. PEX 197 at 1.

Mary Waley

1.      Waley was injured on August 5, 1994. DEX 17; PEX 30.

2.      On May 29, 2002, DCP informed Waley's physician that it would not
authorize or guarantee benefits for physical therapy. PEX 30.

3.      On July 7, 2003, DCP informed Waley's physician that it would not authorize
or guarantee benefits for further office visits or treatment on the basis that her
medical problems were due to a preexisting condition and not related to the
accident that occurred on August 5. 1994. PEX 31.

4.      On December 17, 2003, Waley received a Form 5 <u>Compensation
Determination by Examiner</u> from DCP indicating that her disability
compensation payments would be reduced. PEX 32 at 1-2.  Waley was
informed that she could apply in writing to DCP for reconsideration of the
decision within thirty days. PEX 32 at 1.

5.      On January 7, 2004, Waley formally requested reconsideration of the December 17, 2003, determination. PEX 33.  Waley also requested a hearing. PEX 33.

6.      On January 15, 2004, DCP sent Waley a written acknowledgment of her request for reconsideration. PEX 34.

7.      On March 2, 2004, Waley received a letter from her treating physician indicating that, because her disability compensation claim had been denied, she was now personally responsible for the outstanding balance. PEX 35.

8.      On March 18, 2004, Waley received a letter from DCP explaining that her benefits had been reduced as a result of the December 17, 2003, determination. PEX 37.

9.      On March 19, 2004, Waley notified DCP that her physician' office was under the impression that her benefits had been terminated and that this should not have occurred since her request for reconsideration was still pending with DCP. PEX 36.

10.     On March 26, 2004, Waley sent DCP copies of her medical reports and unpaid medical invoice. PEX 39.

11.     On May 21, 2004, Waley received a letter from Concentra indicating that a discogram was not recommended at this point and that they were not longer sure that the symptoms Waley was currently experiencing were related to the injury that occurred on August 5, 1994. PEX 40.

12.     On August 19, 2004, Waley received a letter from Concentra indicating that an RS4I interferential stimulator was not recommended at this point and that

they were no longer sure that the Waley was currently experiencing were

related to the injury that occurred on August 5, 1994. PEX 41.

13.    On April 23, 2007, Waley received a Form DCORM-1 <u>Final Decision on</u>

<u>Reconsideration</u> from DCP indicating that her Request for Reconsideration of

Notice of Determination had been accepted as timely and upholding the

original decision to reduce her benefits. PEX 42 at 1, 6; DEX 17 at 1, 6.

Waley was also told that, while she could not appeal the decision, she did

have thirty days, or until May 22, 2007, within which to file for a hearing with

OHA. PEX 42 at 1, 6; DEX 17 at 1, 6.

B.    <u>Plaintiffs' § 1983 Claim</u>

1.    <u>Filing for Disability Compensation Benefits Under the CMPA</u>

The easiest way to appreciate the gravamen of the claims made by plaintiffs is

through a graphic representation of the relevant deadlines set by the CMPA.  The Court

can then review each plaintiff's facts to determine the status of their claims within the

overall process and whether there exist any genuine issues of material fact.

| Step | Deadline | Event | Statutory Authority |
|------|----------|-------|---------------------|
| 1. | Within 3 days of injury | Employee reports injury. | D.C. Code § 1-623.20 |
| 2. | Within 3 years of injury | Employee makes claim for disability compensation. | D.C. Code § 1-623.22 |
| 3. | Within 30 days of Step 2 | Mayor or his designee makes a finding of facts. | D.C. Code § 1-623.24 |
| 4. | Within 30 days of Step 3 | Claimant may request reconsideration of the decision. | D.C. Code § 1-623.24 |
| 5. | Within 30 days of Step 4 | Mayor issues written decision. | D.C. Code § 1-623.24 |

| 6. | Within 30 days of Step 5 | Claimant may request reconsideration or request a hearing on the claim before a DOES Disability Compensation. Administrative Law Judge ("ALJ"). | D.C. Code § 1-623.24 |
|---|---|---|---|
| 7. | None | Hearing before ALJ. | D.C. Code § 1-623.24 |
| 8. | Within 30 days of Step 7 | Mayor notifies claimant in writing of decision. | D.C. Code § 1-623.24 |
| 9. | Within 30 days of Step 8 | Claimant may seek review of the decision (award) by the Director of DOES. | D.C. Code § 1-623.28 |
| 10. | None | Director notifies claimant in writing of decision. | D.C. Code § 1-623.28 |
| 11. | Within 30 days of Step 10 | Claimant may file an application for review with the D.C. Court of Appeals. | D.C. Code § 1-623.28 |

2.      Plaintiffs' Allegations

Tara Rogers

Rogers was injured on three occasions:  1) January 1, 1998, 2) April 27, 1998, and 3) February 4, 2002.  It is unclear what process was afforded Rogers in relation to each of these injuries.  While the Amended Complaint only references Roger's February 4, 2002, injury, the documents provided by plaintiffs reference primarily the January 1, 1998, and February 4, 2002, injury dates.  In addition, claim number 552 is used both in reference to the January 1, 1998, and February 4, 2002, injuries.  It could be that the primary injury occurred on January 1, 1998, and that a reoccurrence of that injury occurred on February 4, 2002, or it could be that one claims number was assigned to both injuries.  The Court simply cannot tell from the documents provided.

Patricia Hayden

The record is unclear as to how many times Hayden was injured.  In different documents, there are indications that she was injured on six separate dates:  1) February 2, 1996, 2) February 9, 1996, 3) February 14, 1996, 4) November 30, 1998, 5) December 15, 1999, and 6) November 30, 2005.  While it is possible that Hayden was in fact injured on each of those dates, it is also possible that some of the dates identify recurrences of previous injuries or are typographical errors.  The record is simply too unclear to reach any definitive conclusions as to what has occurred with regard to Hayden's various claims for disability compensation.  For example, even as to the decision issued by DCP on April 24, 2007, while the caption references an injury date of November 30, 2005, as noted above, the text of the decision references the same $33,203.88 amount which earlier documents indicated was an amount paid Hayden for compensation as to her February 9, 1996, injury.  The Court therefore cannot draw any conclusions as to Hayden's claims.

<u>George Morgan</u>

Morgan was injured on May 10, 1983. DEX 18; PEX 153.  On August 3, 2007, Morgan received a final decision from DCP and was told that he had until September 1, 2007, to file for a hearing, as described in Step 6 of the above chart. PEX 161 at 1, 3. There is no evidence in the record that Morgan did so and therefore his claim that he has neither received the claimed benefits nor a hearing is without merit.

<u>Denise Downing</u>

Downing was injured on October 12, 1992. PEX 164 at 1.  On December 12, 2002, Downing requested a formal hearing, PEX 170 at 1, and a pre-hearing conference was set by OHA for January 24, 2003. PEX 21 at 1; DEX 7 at 2.  There is no information

in the record as to whether or not a hearing date was set or if a hearing was ever held.

### Juanita Irving

Irving was injured on May 31, 2001. DEX 8 at 1; PEX 137.  After exhausting all available administrative remedies, Irving filed a claim with the D.C. Court of Appeals. PEX 151 at 1-14.  On April 16, 2004, the D.C. Court of Appeals denied Irving's petition but did so without prejudice to renew.  There is no evidence in the record that she ever renewed her petition and so therefore her claim that she has neither received the claimed benefits nor a hearing is without merit.

### James Winstead

Winstead was injured on 1) July 12, 1990, 2) September 14, 1991, 3) September 19, 1992, and 4) January 12, 1994. PEX 87.  On July 10, 2003, DCP issued a decision regarding Winstead's request for disability compensation relating to injuries occurring on all four days.  He was also told that had thirty days within which to file for reconsideration.  Winstead's request for reconsideration was received on September 12, 2003, and therefore it was denied as untimely by DCP. PEX 104 at 1.  Although Winstead was told that he could file for a hearing with OHA by August 30, 2006, as described in Step 6 of the above chart, there is no evidence in the record that he did so and therefore his claim that he has neither received the claimed benefits nor a hearing is without merit.

### Louis Beale

Beale was injured on August 13, 2001. PEX 1 at 1.  On July 16, 2002, Beale was informed that his claim for disability compensation was being denied because his medical condition was not causally related to his injury. PEX 15.  At that point, Beale was told

that he had thirty days within which to request reconsideration.  Beale's request for reconsideration, however, was not filed until August 21, 2002, and therefore, on June 2, 2006, Beale's final petition for reconsideration was denied as untimely.  Beale received all the process that he was due and therefore his claim that he has neither received the claimed benefits nor a hearing is without merit.

<u>Patricia Newby</u>

Newby was injured on November 30, 1998, PEX 48, and on April 2, 2001. DEX 12 at 1; PEX 43.  With regard to her November 30, 1998, injury, it appears that her request for disability compensation benefits were denied by letter dated June 24, 2002, although that letter was not included by plaintiffs as one of the exhibits.  <u>See</u> PEX 51.  It would appear as though Newby would have had thirty days from her receipt of that denial to request reconsideration, as described in Step 4 of the above chart.  Because there is no evidence in the record that Newby ever did so, her claim that she has neither received the claimed benefits nor a hearing is therefore without merit.

Similarly, with regard to her April 2, 2001, injury, whether viewed as a separate incident or as a recurrence of the November 30, 1998, injury, the record indicates that on August 2, 2002, Newby was notified that her case was being referred back to the claims adjuster for various purposes.  Upon receipt of that decision, Newby had thirty days within which to request a hearing, as described in Step 6 of the above chart.  <u>See</u> PEX 46 at 4 (indicating that an application for formal hearing was enclosed).  Because there is no evidence in the record that Newby ever requested such a hearing, her claim that she has neither received the claimed benefits nor a hearing is therefore without merit.

<u>Sheila Owens</u>

Owens was injured on February 17, 2004. PEX 189 at 1.  On May 19, 2006,

Owens was notified that her disability compensation claim had been accepted. PEX 197

at 1.  Upon receipt of that decision, Owens had thirty days within which to either request

reconsideration or request a hearing, as described in Step 6 of the above chart.  Because

there is no evidence in the record that Owens did either, her claim that she has neither

received the claimed benefits or a hearing is therefore without merit.

Mary Waley

Waley was injured on August 5, 1994.  On April 23, 2007, Waley was notified

that an earlier decision to reduce her benefits had been upheld.  Upon receipt of that

decision, Waley had until May 22, 2007, to request a hearing, as described in Step 6 of

the above chart. PEX 42 at 6.  Because there is no evidence in the record that Waley ever

requested such a hearing, her claim that she has neither received the claimed benefits nor

a hearing is therefore without merit.

3.    The Court's Conclusions

After an extensive review of the record, the Court concludes that there exist

genuine issues of material fact as to three of the ten plaintiffs named in the District's

motion.  These plaintiffs are: 1) Rogers, 2) Hayden, and 3) Downing.  As to the

remaining seven plaintiffs, there are no genuine issues of material fact.  The record

simply does not support plaintiffs' contention that these seven plaintiffs suffered any

delay.  To the contrary, the record clearly indicates that their claims were processed

according to the relevant statutory requirements of the CMPA but that rather than

continue to press their claims through the administrative process and then through the

D.C. Court of Appeals as mandated by the CMPA, plaintiffs decided instead to file suit in

District Court.  Thus, as to the following seven plaintiffs, defendants are entitled to judgment as a matter of law:  1) Morgan, 2) Irving, 3) Winstead, 4) Beale, 5) Newby, 6) Owens, and 7) Waley.

III.    Remaining Plaintiffs

Defendants only moved to dismiss and/or for summary judgment as to ten of the thirteen plaintiffs.  Defendants did not seek dismissal and/or summary judgment as to 1) Davis, 2) the estate of Lyles, and 3) the estate of Rasheed.  Thus, trial in this matter shall resolve the claims of the following six remaining plaintiffs:  1) Rogers, 2) Hayden, 3) Downing, 4) Davis, 5) the estate of Lyles, and 6) the estate of Rasheed.

An Order accompanies this Memorandum Opinion.

_____/S/_____
JOHN M. FACCIOLA
Dated:  March 12, 2008             UNITED STATES MAGISTRATE JUDGE