**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAMES WINDSTEAD,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **THE DISTRICT OF COLUMBIA,** *et al.*, <br><br> Defendants. | Civ. A. No. 04-887 (JMF) |

**MEMORANDUM OPINION**

This case is before me for all purposes including trial.  Currently pending before me and ready for resolution is <u>Plaintiffs' (George Morgan, Juanita Irving, James Windstead, Louis Beale, Patricia Newby, Shelia Owens and Mary Waley) Motion for Motion for [sic] Reconsideration of the March 12, 2008, Order</u> [#66] ("Plains. Mot. for Recon.").  For the reasons stated below, as to those plaintiffs who moved for reconsideration, their motion will be denied.  As to the remaining plaintiffs, they will be ordered to show cause why their cases should not be similarly dismissed.

Plaintiffs are eleven current or former District of Columbia employees and the estates of two former District of Columbia employees who have made claims for disability compensation pursuant to the District of Columbia Comprehensive Merit Personnel System Act ("CMPA").[1] <u>Windstead v. District of Columbia</u>, 538 F. Supp. 2d 104, 107 (D.D.C. 2008).  Defendants are 1) the District of Columbia, 2) Mayor Anthony Williams,[2] 3) James Jacobs, Director of the Office

---

[1] On May 21, 2007, the estates of two individual plaintiffs were substituted as plaintiffs.
[2] Mayor Adrian Fenty was elected in November, 2006, and therefore replaces Mayor Williams as a named

of Risk Management.[3] Id.  Both Williams and Jacobs are sued in their official capacities. Id.

On March 12, 2008, the District Court granted in part and denied in part the <u>District of Columbia Defendants' Renewed Motion to Dismiss or, in the Alternative, for Summary Judgment</u> [#48].  Specifically, the Court 1) granted defendants' motion to dismiss as to plaintiffs' § 1983 claim that the CMPA was facially unconstitutional, 2) granted defendants' motion to dismiss plaintiffs' § 1985 claim that defendants conspired to deprive plaintiffs of due process, 3) granted defendants' motion for summary judgment as to Morgan, Irving, Windstead, Beale, Newby, Owens and Waley, and 4) denied defendants' motion for summary judgment as to Tara Rogers, Patricia Hayden, and Denise Downing. <u>Windstead</u>, 538 F. Supp. 2d at 107-09, 129-30. On March 13, 2008, the seven plaintiffs against whom summary judgment had been granted moved the Court for reconsideration.

On July 21, 2008, the District Court ordered plaintiffs to show cause why their entire case should not now be dismissed as moot as a result of the May 23, 2006 decision by the Court of Appeals in <u>Lightfoot v. District of Columbia</u>, 448 F.3d 392 (D.C. Cir. 2006).  The Court also directed plaintiffs to address the issue of whether the Court of Appeals' decision in <u>Lightfoot</u> also now barred an action for deprivation damages.

**DISCUSSION**

I.      <u>The Protections of the 14th Amendment</u>

The Fourteenth Amendment provides that no person shall be deprived of life, liberty or property without due process of law.  Most fundamentally, the amendment must be read to protect a person from being deprived of her property without being afforded the requisite modicum of procedures that a court finds are required.  As interpreted by the Supreme Court in

---

defendant.  See http://dc.gov/mayor/bios/fenty.shtm (last visited March 4, 2008).
[3] The case against defendant Computer Literacy World/Creative Disability Management was terminated on October 29, 2005.  See <u>Stipulation of Dismissal Without Prejudice</u> at [#20].

the seminal case of <u>Matthews v. Eldridge</u>, 424 U.S. 319 (1976), determining whether due process has been met requires consideration of the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

<u>Id.</u> at 335.

In the context of the delegation to an administrative agency of the power to grant or withhold benefits, any deprivation of those benefits usually constitutes the deprivation of a protected property interest. See <u>Goldberg v. Kelly</u>, 397 U.S. 254 (1970) (protected property interest in the continued receipt of welfare benefits). Thus, at a minimum, the deprivation itself requires prior notice and the opportunity to be heard. See <u>Matthews</u>, 424 U.S. at 249 ("The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'") (internal quotations omitted).

In the case at bar, there is no dispute that the continuation of the benefits plaintiffs seek is a property interest protected from deprivation by due process of law. Nor is there any challenge by plaintiffs to the sufficiency of the procedures provided for by the District of Columbia statute prior to the deprivation of the benefits at issue. The sole question therefore is whether the delay plaintiffs encountered while attempting to avail themselves of those procedures is in itself a violation of due process.[4] In light of the alternative state remedies that were available to

---

[4] Although plaintiffs make no distinction between procedural and substantive due process, and the Court frames its analysis in terms of the Constitution's procedural due process guarantees, courts have been reluctant to entertain substantive due process challenges to state administrative agency action:

> We have cautioned that "even the outright violation of state law by local officials 'is a matter primarily of concern to the state and does not implicate the Constitution'-absent 'fundamental procedural irregularity, racial animus, or the

3

plaintiffs, however, that question need not be answered.

II.     Alternative State Remedies

Prior to filing suit in this Court, plaintiffs could have availed themselves of two alternative remedies in the District of Columbia Court of Appeals. First, plaintiffs could have sought review of the agency's actions under the District of Columbia Administrative Procedure Act ("DCAPA"). Under the DCAPA, "[a]ny person suffering a legal wrong, or adversely affected or aggrieved, by an order or decision of the Mayor or an agency in a contested case, is entitled to a judicial review thereof in accordance with this subchapter upon filing in the District of Columbia Court of Appeals a written petition for review." D.C. Code § 2-510(a). The DCAPA specifically provides that the Court of Appeals may "compel agency action unlawfully withheld or unreasonably delayed." D.C. Code § 2-510(a)(2). As interpreted by the District Court for the District of Columbia, "[t]he Administrative Procedure Act was an effort not only to expand rights of review of administrative action in the District of Columbia, but also to centralize such review in one place and to eliminate the disorderliness and lack of uniformity of decision inherent in multiple tribunals." Cheek v. Washington, 333 F. Supp. 481, 484 (D.D.C.

---

like.'" Roy, 712 F.2d at 1523 (quoting Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 833 (1st Cir.), cert. denied, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982)). A complaint pleads a substantive due process violation by a local administrative agency only if the facts alleged are "shocking or violative of universal standards of decency." Amsden, 904 F.2d at 757 (quoting Furtado v. Bishop, 604 F.2d 80, 95 (1st Cir.1979), cert. denied, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980)). The complaint alleges that the Board delayed a hearing from March 30 until August 20, "pending a resolution of the City's appeal from the ruling of the Rhode Island Ethics Commission." We find these alleged facts insufficiently egregious to state a substantive due process violation under Amsden and Furtado. See Chiplin, 712 F.2d at 1526 (five-year, "bad faith" delay in town's processing of building permit insufficient to state substantive due process claim); Creative Environments, 680 F.2d at 831 (complaint alleging that development proposal was rejected through arbitrary misapplication of state law by local officials, held insufficient to state constitutional violation).

Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 1000 n.8 (1st Cir. 1992).

4

1971).

In addition, the D.C. Code also specifically references the District of Columbia Court of Appeals' jurisdiction "to review orders and decisions of the Commissioner [Mayor] of the District of Columbia, the District of Columbia Council, any agency of the District of Columbia . . . in accordance with the District of Columbia Administrative Procedure Act . . . " D.C. Code § 11-722.  See Medina v. District of Columbia, 517 F. Supp. 2d 272, 283 (D.D.C. 2007) (noting the availability of review of agency actions by the District of Columbia Court of Appeals under the DCAPA).  Accord Douglass v. District of Columbia, No. 86-CV-427, 1987 WL 15696, at *2 (D.D.C. 1987); District of Columbia v. Greater Wash. Cent. Labor Council, 442 A.2d 110, 117 (D.C. 1982); Capitol Hill Restoration Soc'y, Inc. v. Moore, 410 A.2d 184, 186 (D.C. 1979).

In addition to seeking review under the DCAPA, plaintiffs could also have sought a writ of mandamus from the District of Columbia Court of Appeals.  See District of Columbia Court of Appeals Rule 21; Harris v. D. C. Comm'n on Human Rights, 562 A.2d 625, 633 (D.C. 1989) (noting that if plaintiff was unhappy with the pace at which the District agency was proceeding, she could have filed a petition for a writ of mandamus).  Such judicial relief would have remedied whatever delay plaintiffs encountered in that the court could have required that agency action be completed within a certain period of time.

Surely the adequacy of the procedures specified in the law combined with the power to seek judicial relief if those procedures were delayed provided these plaintiffs with all the process they were due.  Any other conclusion radically transforms the relationship between this federal court and the District of Columbia administrative agencies for it would permit an action, premised on the Constitution under § 1983, whenever a plaintiff encountered a delay that this Court deemed "unreasonable" even though the plaintiff can neither show any prejudice from that

delay nor that she sought relief from the District of Columbia courts to prevent the delay from becoming unreasonable in the first place.  In other words, whether due process has been provided in a particular case is often a function of whether the remedy provided by the state, whether before or after there has been a deprivation of property, is adequate.  Unless there is a showing of the inadequacy of the entire state system, both administrative and judicial, to remedy the claimed deprivation, plaintiffs do not have a due process claim cognizable under the due process clause.  As the Seventh Circuit stated in <u>Veterans Legal Defense Fund v. Schwartz</u>, 330 F.3d 937 (7th Cir. 2003):

> While a plaintiff is not required to exhaust state remedies to bring a § 1983 claim, this does not change the fact that no due process violation has occurred when adequate state remedies exist. The whole idea of a procedural due process claim is that the plaintiff is suing because the state failed to provide adequate remedies. Therefore, we do not require a plaintiff to pursue those remedies in order to challenge their adequacy, but likewise we do not allow a plaintiff to claim that she was denied due process just because she chose not to pursue remedies that were adequate. Given the availability of state remedies that have not been shown to be inadequate, plaintiffs have no procedural due process claim.

<u>Id.</u> at 941.

  Here, the two procedures available to plaintiffs militate against any finding that they have been deprived of their property without due process of law.  Indeed, the contrary conclusion would require the federal courts to entertain every action where it was contended that state administrative action was delayed, no matter how likely it was that the plaintiffs would ultimately prevail.  *Reductio ad absurdum*—the people on line at the D.C. Department of Motor Vehicles have a cause of action as soon as some judge somewhere decides they have waited an "unreasonable" amount of time.  Therefore, plaintiffs' failure to avail themselves of the available state remedies and to then show that those remedies are inadequate is fatal to their claims.

One final point must be made about the dictum in <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 547 (1985), upon which plaintiffs place so much reliance. In the passage referenced by plaintiffs, the Supreme Court suggested that a delay in the adjudication of the legitimacy of a deprivation which has already occurred might constitute the taking of a property interest if it continues for too long a period of time. That suggestion is perfectly consistent with the cases that hold, for example, that a delay in the commencement of forfeiture proceedings for property that has already been seized might constitute a taking without due process if the party whose property was seized had to wait interminably for the commencement of those proceedings. In those cases, the justification for the seizure came after the forfeiture. Here, the decisions at issue were the product of a process which provided plaintiffs with notice and an opportunity to be heard prior to the deprivation of plaintiffs' benefits, the property interest at stake. Plaintiffs therefore received all the process that was due before they lost whatever property interest they could claim in the continuation of their benefits. The delay plaintiffs experienced in attempting to overturn that result does not somehow render unconstitutional the process that lead to that result, particularly when at all times, plaintiffs had both judicial and statutory remedies available to them.

## CONCLUSION

As to those plaintiffs who seek reconsideration of this Court's decision to grant defendants' motion for summary judgment, their failure to avail themselves of the available remedies, coupled with the lack of any genuine issues of material fact confirm the appropriateness of this Court's original decision. As to those plaintiffs who remain in the case, in light of the above analysis, and before this Court proceeds any further, they will be ordered to show cause why their cases should not similarly be dismissed for failure to allege and establish

that the combined administrative and judicial remedies provided them by District of Columbia law are inadequate.

An Order accompanies this Memorandum Opinion.

|  |  |
|---|---|
|  | /S/ |
|  | JOHN M. FACCIOLA |
| Dated:  January 26, 2009 | UNITED STATES MAGISTRATE JUDGE |