# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JAMES WINSTEAD**, *et al.,* | |
| **Plaintiffs,** | |
| **v.** | **Civ. A. No. 04-887 (JMF)** |
| **THE DISTRICT OF COLUMBIA**, *et al.*, | |
| **Defendants.** | |

## FINDINGS OF FACT[1]

### Tara Rogers

1.   Rogers was injured on January 1, 1998. DEX[2] 2 at 1; PEX 201 at 1; 7/26/10 Tr. at 127.

2.   Rogers was injured on April 27, 1998. PEX 198 at 4.

3.   Rogers was injured on February 4, 2002. PEX 203.

4.   On April 28, 1998, Rogers filed a Form 1 Claimant's Form with the D.C. Disability Compensation Program ("the DCP") regarding her January 1, 1998 injury. PEX 198 at 1.

5.   On May 5, 1998, Rogers' supervisor signed a Form 2 Supervisor's Form indicating that she did not certify that Rogers was in the performance of her duty at the time of her April 27, 1998, injury. PEX 198 at 4.

---

[1] The findings of fact in this case are limited to "1) the allegations in the First Amended Complaint [#2], 2) the findings I made in my 2008 order, and 3) evidence produced by either party at trial." Memorandum Order [#155] at 6.

[2] "DEX" refers to those exhibits filed by the District of Columbia at [#209]. "PEX" refers to those exhibits filed by plaintiffs at [#166] through [#205].

6.     On December 31, 1998, Rogers received a <u>Notice of Determination by Examiner</u> from the DCP indicating that her disability compensation claim for benefits relating to her January 1, 1998, injury had been denied/terminated on the basis that she had a non-occupational disease. PEX 199.  Rogers was also told that she could submit a written request for review within thirty days of the date of the decision. PEX 199.

7.     On August 27, 1999, Rogers received a <u>Final Order of Denial</u> from the DCP regarding her January 1, 1998, injury. PEX 200 at 1.  Her claim was denied on the basis that she had a non-occupational disease. PEX 200 at 1.  Rogers was also told that she could submit a written request for a hearing within thirty days of the date of the decision. PEX 200 at 2.

8.     On October 6, 1999, Rogers requested a formal hearing from the Office of Hearings and Adjudication ("OHA") regarding her January 1, 1998, injury. PEX 201 at 1.

9.     On September 18, 2000, Rogers received a <u>Final Compensation Order</u> from the DCP adopting the Hearing Officer's Recommended Compensation Decision, which recommended that Rogers' claim for disability compensation and medical benefits relating to her January 1, 1998,[3] injury be granted. PEX 202 at 1, 6.  The parties were informed that any appeals had to be filed in writing within thirty days of the date of the decision. PEX 202 at 1.

10.    On January 27, 2002, Rogers wrote a letter to Mayor Williams regarding her inability to obtain health insurance through the DCP. PEX 209 at 1.

11.    On May 22, 2002, Rogers received a Form 5 <u>Notice of Controversion</u> stating that her claim for disability benefits as to her February 4, 2002, injury had been denied. PEX

---

[3] Although the order itself references claim number OBA No. 2721, which was previously associated with plaintiff's January 1, 1998, injury, the attached decision references an injury date in April of 1998.  <u>Compare</u> PEX 201 at 1 <u>with</u> PEX 202.  <u>See also</u> PEX 202 at 3.

203.  Rogers was also informed that she could apply in writing for reconsideration within thirty days of the date of the decision. PEX 203.

12.      On June 24, 2002, Rogers formally requested reconsideration of the <u>Notice of Controversion</u> dated May 22, 2002 relating to her February 4, 2002, injury. PEX 204 at 1.

13.      On July 5, 2002, the D.C. Office of Risk Management ("ORM") acknowledged receipt of Rogers' request for reconsideration of her disability compensation benefits relating to her February 4, 2002, injury. PEX 205.

14.      On August 6, 2002, Rogers received notice from the DCP that an appointment for an Independent Medical Evaluation ("IME") relating to her February 4, 2002, injury had been scheduled for August 28, 2003. PEX 206.

15.      On September 6, 2002, Rogers received a letter from CLW/CKM, Inc. indicating that she had been selected to participate in the Skills Equal Employment Knowledge program. PEX 207 at 1.

16.      On November 7, 2002, Rogers received a letter from Concentra Medical Examinations indicating that an appointment for an IME relating to her January 1, 1998 injury had been scheduled for December 23, 2002. PEX 208.

17.      On April 17, 2003, Rogers received a DCP-5 <u>Notice of Intent to Terminate Disability Compensation Payments</u> from the DCP stating that her payments relating to her January 1, 1998,[4] injury would be terminated on May 18, 2003. PEX 210 at 1. Rogers was also told that she could either request reconsideration by submitting a

---

[4] Previously, the injury occurring on January 1, 1998, was associated with claims number OBA 2721, however, the notice associates the January 1, 1998 injury with claim number 552.  <u>Compare</u> PEX 201 <u>with</u> PEX 210.

written request within 10 days of the date of the notice or appeal to the OHA. PEX 210 at 1-2.

18. On June 13, 2003, Rogers sent the DCP a letter indicating her willingness to undergo vocational rehabilitation services with regard to her February 4, 2002,[5] injury. PEX 211.

19. On June 13, 2003, Rogers formally requested reconsideration of the <u>Notice of Controversion</u> dated April 17, 2003, relating to her February 4, 2002, injury. PEX 212 at 1.

20. On June 18, 2003, ORM acknowledged receipt of Rogers' request for reconsideration of her disability compensation benefits relating to her February 4, 2002, injury. PEX 213.

21. On July 31, 2003, Rogers submitted an <u>Application for Formal Hearing</u> to OHA relating to her February 4, 2002,[6] injury. PEX 214 at 1-2.

22. On August 20, 2003, Rogers requested a Pre-Hearing Conference from OHA relating to her January 1, 1998, and February 4, 2002 injuries.[7] PEX 215.

23. On September 7, 2003, OHA issued an <u>Order Granting Motion for Pre-Hearing Conference</u> relating to claims number 552.[8] PEX 216.

24. On September 15, 2003, Rogers sent the DCP a copy of her report of disability rating, seeking an award for permanent partial disability.[9] PEX 217.

---

[5] In this letter, Rogers associates claims number 552 with her injury of February 4, 2002.
[6] Although the cover letter accompanying the application identifies the date of injury as February 4, 2002, the attached notice identifies the date of injury as January 1, 1998. <u>Compare</u> PEX at 1 <u>with</u> PEX at 3. Both documents reference claim number 552.
[7] The letter references claim number 552.
[8] It is unclear whether the pre-hearing conference was granted as to Rogers' January 1, 1998, injury, or her February 4, 2002, injury, or both.
[9] The cover letter references her February 4, 2002, injury, and cites claim number 552, but the report itself references her January 1, 1998, injury.

25.  On September 29, 2003, Rogers sent the Office of the Corporation Counsel a letter outlining her analysis of the issues presented in relation to her efforts to obtain disability compensation for her injury of January 1, 1998.[10] PEX 218.

26.  On October 1, 2003, Rogers withdrew her application to OHA for a formal hearing relating to her January 1, 1998, injury on the basis that all contested issues had been resolved in that DCP had agreed to reinstate Rogers' benefits including all past due and accrued benefits from May 18, 2003, to the present and continuing. PEX 219.

27.  On October 2, 2003, Rogers received a letter from Elite Medical Legal Services confirming that an IME had be scheduled for her on October 16, 2003, regarding her January 1, 1998, injury. PEX 220 at 1.

28.  On October 23, 2003, OHA issued an Order Dismissing Application for Formal Hearing based on the representations in Rogers' October 1, 2003, letter.[11] PEX 221.

29.  On October 29, 2003, Rogers sent DCP a copy of the October 2, 2003, written agreement between the parties relating to her February 4, 2002,[12] injury. PEX 222 at 1.

30.  On January 5, 2004, the DCP issued a Form 5 Compensation Determination by Examiner reducing Rogers' benefits as to her January 1, 1998,[13] injury. PEX 223.

31.  On April 2, 2004, Rogers received a Form 5 Compensation Determination by Examiner from the DCP stating that her disability compensation claim for her January 1, 1998,[14] injury had been approved. DEX 2 at 1-2; PEX 224 at 1-2; 7/26/10 Tr. at 132-33; PEX 225 at 3-4.  Rogers was also told that she could apply in writing for

---

[10] The letter also references claim number 552.
[11] The order references claim number 552.
[12] The letter references claim number 552.
[13] The determination references claim number 552.
[14] The determination references claim number 552.

reconsideration of the decision within 30 days from the date of the decision. DEX 2 at 1; PEX 224 at 1; PEX 225 at 3-4.

32.   On April 9, 2004, Rogers formally requested reconsideration by the DCP of the April 2, 2004, compensation determination.[15] PEX 225 at 1-2; 7/26/10 Tr. at 133.

33.   On April 12, 2004, Rogers formally requested reconsideration of the DCP's April 2, 2004, determination.[16] PEX 226 at 1-3; 7/26/10 Tr. at 133.

34.   On July 23, 2004, Rogers received a letter from the D.C. Office of Personnel ("OP") regarding her January 1, 1998, injury, in which she was asked whether she planned and was able to return to her position. PEX 228.

35.   On June 9, 2006, Rogers received a Form NOC Notice of Determination Regarding Permanent Partial Disability Benefits relating to her January 1, 1998, injury that indicated that an overpayment of benefits had occurred. PEX 229 at 1-2.  Rogers was also told that she could either 1) request reconsideration by submitting the Request for Reconsideration Form and supporting documentation within thirty days of the date of the notice, or 2) appeal the notice to OHA. PEX 229 at 1.

36.   On June 16, 2006, Rogers received a Form DCORM-1 Final Decision on Reconsideration from DCP as to her injury of January 1, 1998, indicating that the previous determination as to Rogers' disability was being upheld but that clarification regarding her desire to receive permanent partial disability benefits was required. PEX 230 at 1-2; 7/26/10 Tr. at 130, 133.  Rogers was also told that she could file for a

---

[15] The April 9, 2004, letter refers to Rogers' February 4, 2002, injury, while the April 2, 2004, determination she seeks reconsideration of references her January 1, 1998, injury.  Both documents reference claim number 552.
[16] The April 12, 2004, letter refers to Rogers' February 4, 2002, injury, while the April 2, 2004, determination refers to her January 1, 1998, injury.  Both documents reference claim number 552.

hearing with OHA by July 15, 2006, thirty days from the date of the decision. PEX 230 at 2-3.

Patricia Hayden

1. Hayden was injured on February 2, 1996. PEX 78 at 1 n.1; 7/27/10 Tr. at 31.

2. Hayden was injured on February 9, 1996. PEX 54 at 1; 7/27/10 Tr. at 31.

3. Hayden was injured on February 14, 1996. PEX 53; 7/27/10 Tr. at 32.

4. Hayden was injured on November 30, 1998. PEX 70; 7/27/10 Tr. at 32.

5. Hayden was injured on December 15, 1999. PEX 78 at 1; 7/27/10 Tr. at 31.

6. Hayden was injured on November 30, 2005. DEX 3 at 1; PEX 80; 7/27/10 Tr. at 33.

7. On December 10, 2000, Hayden filed a claim for recurrence of her disability relating to her February 9, 1996, injury. PEX 56; 7/27/10 Tr. at 35.

8. On March 28, 2001, Hayden sent a letter to the DCP requesting information about the status of her October 2000 claim for recurrence of her disability relating to her February 14, 1996, injury. PEX 53; 7/27/10 Tr. at 35-36.

9. On May 9, 2001, Hayden received a Notice of Determination by Examiner from the DCP stating that her disability compensation claim for her February 9, 1996, injury was being terminated. PEX 54 at 1; 7/27/10 Tr. at 37.  Hayden was informed that she could submit a written request for review of the decision within thirty days from the date of the decision. PEX 54 at 1.

10. On July 18, 2001, Hayden formally requested reconsideration of the Notice of Determination relating to her February 14, 1996, injury. PEX 55; 7/27/10 Tr. at 37.

11.    On October 17, 2001, Hayden sent a letter to the DCP requesting information about the status of her claim for recurrence of her disability relating to her February 9, 1996, injury, which was filed on December 10, 2000. PEX 56 at 1.

12.    On January 23, 2002, Hayden sent a letter to the DCP forwarding a copy of her July 18, 2001, request for reconsideration relating to her February 9, 1996, injury. PEX 57 at 1; 7/27/10 Tr. at 37.

13.    On January 25, 2002, Hayden received a <u>Final Order</u> from the DCP stating that her request for reconsideration relating to her February 9, 1996, injury had been denied as untimely because it was not filed within thirty days of the decision. PEX 58.

14.    On January 30, 2002, Hayden filed an application for a formal hearing and final order of denial relating to her February 9, 1996, injury. PEX 59; 7/27/10 Tr. at 38.

15.    On May 31, 2002, the DCP issued a <u>Final Compensation Order</u> denying Hayden's claim for benefits relating to her February 9, 1996, injury. PEX 60 at 4; 7/27/10 Tr. at 37.

16.    On December 10, 2002, the D.C. Department of Employment Services' ("DOES") Office of the Director issued a <u>Decision and Remand Order of the Director</u> reversing the May 31, 2002, <u>Final Compensation Order</u> denying Hayden's claim for benefits relating to her February 9, 1996, injury. PEX 60 at 4; 7/27/10 Tr. at 39.  Both parties were informed that they could file an application for review with the D.C. Court of Appeals within 30 days of the date of the decision. PEX 60 at 5.

17.    On January 23, 2003, Hayden sent a letter to the DCP requesting a breakdown of their calculations regarding her disability award relating to her November 30, 1998, injury. PEX 70.

18.     On August 6, 2003, the D.C. Court of Appeals issued an <u>Order</u> granting the District's consent motion to dismiss its petition for review of the December 10, 2002, decision relating to her February 9, 1996,[17] injury. PEX 61.

19.     On August 11, 2003, Hayden forwarded the DCP a copy of the D.C. Court of Appeal's August 6, 2003, decision and requested payment of temporary total disability compensation wage replacement benefits relating to her February 9, 1996, injury. PEX 62 at 1.

20.     On September 15, 2003, Hayden sent the DCP various completed forms in support of her request for wage replacement benefits relating to her February 9, 1996, injury. PEX 63.

21.     On October 23, 2003, Hayden sent the DCP copies of her 2000 and 2002 income tax forms in support of her request for temporary total disability compensation relating to her February 9, 1996, injury. PEX 64.

22.     On November 7, 2003, Hayden sent the DCP copies of social security documents in support of her claim for disability benefits relating to her February 9, 1996, injury. PEX 65.

23.     On January 7, 2004, Hayden sent the DCP a copy of her IRS statement of income for 2000, 2001, and 2002, in support of her claim for benefits relating to her February 9, 1996, injury. PEX 67, PEX 68.

24.     On January 21, 2004, Hayden sent the DCP a letter requesting a breakdown of their calculations regarding her disability award for her February 9, 1996, injury. PEX 69.

25.     On January 23, 2004, Hayden was paid $33,203.88. 7/27/10 Tr. at 40.

---

[17] Although the order does not identify any date of injury, the docket number is the same as that on the December 10, 2002, decision, which does identify the date of injury as February 9, 1996.  <u>See</u> PEX 60 at 1.

26.     On February 2, 2004, Hayden sent the DCP a letter challenging the amount that she

had been awarded in temporary total disability compensation benefits relating to her

February 9, 1996, injury. PEX 72.

27.     On February 3, 2004, Hayden received a letter from the DCP explaining the

calculations that were done to arrive at the total sum of her award relating to her

February 9, 1996, injury.[18] PEX 73.

28.     On February 9, 2004, Hayden sent the DCP a letter requesting additional information

about their calculations regarding the disability award for her February 9, 1996,

injury. PEX 74.

29.     On February 20, 2004, Hayden formally requested reconsideration of the calculations

contained in the DCP's letter of February 3, 2004, which contained a detailed

breakdown of the disability award for her February 9, 1996, injury. DEX 3 at 2; PEX

75.

30.     On February 24, 2004, the DCP acknowledged receipt of Hayden's request for

reconsideration of her disability compensation benefits relating to her February 9,

1996, injury. PEX 76.

31.     On March 24, 2004, Hayden filed <u>Petitioner's Suggestions in Support of Petition in</u>

<u>Mandamus</u> with the D.C. Court of Appeals relating to her February 9, 1996, injury.[19]

PEX 78 at 1-14.

---

[18] Although the letter does not identify a date of injury, the date of the letter and its reference to a payment of $33,203.88 clearly indicates that it was written in response to Hayden's February 2, 2004, letter challenging the DCP's compensation payment calculations relating to her injury of February 9, 1996. <u>See</u> PEX 72.

[19] Although the petition references an injury date of February 2, 1996, and a recurrence of injury date of December 15, 1999, based on the use by the D.C. Court of Appeals of the claims number used previously to reference Hayden's February 9, 1996, injury, the petition appears to reference the February 9, 1996, injury. <u>See</u> PEX 79; PEX 75 at 1.

32.   On April 16, 2004, the D.C. Court of Appeals issued an <u>Order</u> denying without

prejudice Hayden's petition for writ of mandamus relating to her February 9, 1996.[20]

PEX 79.

33.   On April 25, 2006, Hayden was paid $79,951. 7/27/10 Tr. at 40-42.

34.   On April 24, 2007, Hayden received a Form DCORM-1 <u>Final Decision on</u>

<u>Reconsideration</u> from the DCP indicating that her disability compensation claim for

her November 30, 2005,[21] injury had been reconsidered and that she was being

awarded additional monies. PEX 80 at 2; DEX 3 at 2.  Hayden was also told that she

had thirty days, or until May 23, 2007, to request a hearing with OHA. PEX 80 at 1-3;

DEX 3 at 1-3.

<u>George Morgan</u>

1.   Morgan was injured on May 10, 1983. DEX 18; PEX 153; PEX 235 at 2; 7/26/11 Tr.

at 217.  He has not returned to work since then. 7/26/11 Tr. at 219.

2.   On December 18, 1998, Morgan received a letter from CorVel scheduling an IME for

January 5, 1999. PEX 154 at 3.

3.   On October 17, 2000, Morgan received a <u>Notice of Determination by Examiner</u> from

the DCP adjusting his benefits to reflect that he had been found to be capable of

returning to light duty work. DEX 18; PEX 153.  Morgan was informed that he could

submit a written request for a review within 30 days of the date of the adjustment.

DEX 18; PEX 153.

---

[20] Although the order does not reference any date of injury, it does use the same claim number used previously to reference Hayden's February 9, 1996, injury.  <u>Compare</u> PEX 79 <u>with</u> PEX 75 at 1.

[21] Although the decision references an injury date of November 30, 2005, in its caption, the body of the decision discusses the payment to Hayden of $33,203.88, an amount which the record earlier indicated was made in reference to Hayden's injury of February 9, 1996.

4.      On November 14, 2000, Morgan sent two letters indicating his dissatisfaction with his compensation adjustment. PEX 154 at 1, 2.

5.      On November 19, 2000, the DCP reduced Morgan's benefits pursuant to an alleged change in wage earning capacity. 7/26/11 Tr. at 218.

6.      On December 12, 2000, Morgan sent a letter to the DCP requesting reconsideration of his workers' compensation decision. PEX 155 at 1.

7.      On January 3, 2001, Morgan formally requested adjustment of his lost wage-earning capacity based upon a change of circumstances. PEX 156; 7/26/11 Tr. at 218.

8.      On June 21, 2001, Morgan sent the DCP a letter inquiring about the status of his claim filed January 3, 2001. PEX 157.

9.      On September 3, 2003, Morgan received a letter from the DCP requesting that he complete a claim for continuing benefits form, a request for copy of transcript of tax form, and an election of benefits form. PEX 158.

10.     On March 19, 2004, Morgan filed a formal claim for workers' compensation benefits based upon a change of circumstances. PEX 159.

11.     Morgan received biweekly lost wage benefits and medical benefits from the DCP from May 10, 1983 up to and including June 8, 2004. 7/26/10 Tr. at 217.

12.     On April 30, 2007, Morgan received a letter from ORM asking that he confirm, within ten days, that no deductions were being withheld from his bi-weekly compensation check for health insurance and/or life insurance. PEX 160 at 1.

13.     On August 3, 2007, Morgan received a <u>Final Decision on Reconsideration</u> from DCP upholding the original decision to reduce his benefits. PEX 161 at 1-3.  Morgan was

also told that he had thirty days, or until September 1, 2007, to file for a hearing with OHA. PEX 161 at 1, 3.

14.   On June 5, 2008, an evidentiary hearing was held by OHA. 7/27/10 Tr. at 16.

15.   On October 24, 2008, the OHA issued a <u>Compensation Order</u> in which it reversed the August 3, 2007 <u>Final Decision on Reconsideration</u> and granted Morgan's claim for relief seeking reinstatement of temporary total disability compensation benefits from November 19, 2000 and payment of medical expenses. PEX 235 at 11; 7/27/10 Tr. at 16.  Morgan was awarded $138,082.88. 7/27/10 Tr. at 16.

16.   On December 24, 2008, Morgan's award was reduced to $78,240.64, which he was paid. 7/27/10 Tr. at 17.

<u>Denise Downing</u>

1.   Downing was injured on October 12, 1992. PEX 164 at 1; 7/27/10 Tr. at 20.

2.   On August 31, 2000, Downing received a <u>Final Compensation Order</u> from DOES, which adopted the Hearing Officer's <u>Recommended Decision</u> to: 1) grant Downing's request for past due compensation benefits based upon an erroneous application for her weekly wage, 2) grant Downing's request for reinstatement of temporary total disability benefits effective May 11, 1997, and 3) grant Downing's request for payment of medical expenses relating to her low back strain but not her carpal tunnel syndrome. PEX 162 at 1, 10; 7/27/10 Tr. at 20.  Both parties were told that they had thirty days from the date of the decision to file a Petition for Review. PEX 162 at 1.

3.   On December 11, 2000, Downing sent a letter to the DCP requesting an accounting and/or reconciliation of benefits for the previously issued <u>Final Compensation Order</u>. PEX 164 at 1.

4.  On January 4, 2001, Downing sent another letter to the DCP requesting a reconciliation of her compensation case. PEX 166 at 1.

5.  On March 28, 2001, Downing sent a letter to DCP requesting the CA-25 representing the DCP's payment of benefits to her. PEX 167 at 1.

6.  On June 12, 2001, Downing formally requested benefits from the DCP. PEX 169.

7.  On December 12, 2002, Downing requested a formal hearing from OHA. PEX 170 at 1.

8.  On December 20, 2002, Downing received an Order Granting Pre-Hearing Conference from OAH that set a pre-hearing conference for January 24, 2003. PEX 21 at 1; DEX 7 at 1-2.

9.  On October 9, 2008, Downing received a check from the DCP for $34,799.36. DEX 42.

<u>Juanita Irving</u>

1.  Irving was injured on May 31, 2001. DEX 8 at 1; PEX 137; 7/26/10 Tr. at 175.

2.  On June 21, 2001, Irving received a Notice of Acceptance from the DCP acknowledging the filing of her disability compensation claim. PEX 137; 7/26/10 Tr. at 177.

3.  On August 28, 2001, Irving received a Notice of Determination by Examiner from the DCP notifying her that her disability compensation claim for benefits had been suspended. PEX 138; 7/26/10 Tr. at 177.  Irving was also informed that she could submit a written request for review of the decision within thirty days of the decision. PEX 138.

4.      On September 25, 2001, Irving submitted a written request for review of the DCP

        decision dated August 28, 2001. PEX 139.

5.      On September 11, 2002, Irving sent the DCP a letter seeking a response to her request

        for reconsideration and also requesting wage replacement benefits. PEX 140; 7/26/10

        Tr. at 178.

6.      On September 16, 2002, Irving received a written acknowledgment from ORM

        regarding her request for reconsideration. PEX 141.

7.      On December 12, 2002, Irving sent OHA a letter seeking a response to her request for

        a hearing. PEX 142.

8.      On December 20, 2002, Irving received an Order Granting Pre-Hearing Conference

        from OAH that set a pre-hearing conference for January 24, 2003. PEX 21 at 1-2;

        DEX 7 at 1-2.

9.      On August 8, 2003, Irving filed an application with OHA for a formal hearing. PEX

        143 at 2-3.

10.     On August 26, 2003, Irving received a letter from OHA stating that OHA lacked

        jurisdiction over her claim because a Final Order (Denial of Award Order) had not yet

        been issued by the Disability Compensation Manager. PEX 144.

11.     On September 3, 2003, Irving filed Claimant's Application for Review with the Labor

        Standards Office ("LSO"), Office of the Director. PEX 145 at 1-2.

12.     On November 25, 2003, DOES' Office of the General Counsel acknowledged

        Irving's September 10, 2003, filing in its Notice of Application for Review Filed.

        PEX 146.

13.   On December 1, 2003, Irving received a <u>Reconsideration Final Order</u> from DCP stating that the decision to suspend her compensation payments had been reversed and referred back to the claims adjuster. DEX 15; PEX 147; 7/26/10 Tr. at 178, 186, 203, 210.

14.   On December 8, 2003, Irving withdrew <u>Claimant's Application for Review</u> from DOES citing a resolution of contested issues. PEX 148; 7/26/10 Tr. at 178, 203.

15.   On February 24, 2004, Irving sent the DCP a letter requesting payment of her compensation benefits and an explanation of the calculations. PEX 149; 7/26/10 Tr. at 187, 210.

16.   On March 1, 2004, Irving sent the DCP a letter requesting past due and accrued wage replacement benefits. PEX 150; 7/26/10 Tr. at 189-90, 202.

17.   On March 24, 2004, Irving filed <u>Petitioner's Suggestions in Support of Petition in Mandamus</u> with the D.C. Court of Appeals. PEX 151 at 1-14; 7/26/10 Tr. at 190-91.

18.   On April 16, 2004, the D.C. Court of Appeals issued an <u>Order</u> denying Irving's petition without prejudice to renewal. PEX 152.

19.   On September 29, 2008, Irving sent the Personnel Labor Relations Division copies of her medical records. 7/26/10 Tr. at 206.

20.   In March 2009, Irving received a check for $53,448. 7/26/10 Tr. at 185, 209, 211.

21.   On May 26, 2010, OHA's Administrative Hearings Division ("AHD") issued a <u>Compensation Order</u> in which it concluded that she was entitled to temporary total disability benefits from December 1, 2003 to the present and continuing and causally related medical benefits from June 4, 2001 through July 15, 2005, and additional causally related medicals. PEX 241 at 7.

22.    In June 2010, Irving received a check for $29,239. 7/26/10 Tr. at 185, 209, 211.

<u>James Winstead</u>

1.    Winstead was injured on July 12, 1990,[22] September 14, 1991, September 19, 1992, and January 21, 1994. PEX 87; PEX 234 at 1-2.

2.    Winstead retired in May of 1994. 7/26/10 Tr. at 146.

3.    On December 7, 1999, Winstead sent DCP a letter requesting authorization for surgery relating to his January 21, 1994, injury. PEX 81.

4.    On May 15, 2000, Winstead received a letter from CorVel indicating his request for pre-certification for surgery relating to his January 21, 1994,[23] injury could not be accommodated because a surgery date had not been provided. PEX 82.

5.    On October 17, 2000, Winstead received a Pre-Certification authorization from CorVel for an MRI relating to his January 21, 1994,[24] injury. PEX 83.

6.    On November 16, 2001, Winstead requested a full and final lump-sum settlement of his disability compensation award for permanent impairment relating to the injuries that occurred on all four dates. PEX 84.

7.    On December 5, 2001, Winstead sent the DCP a formal request for benefits and indicated his interest in a full and final settlement relating to the injuries that occurred on all four dates. PEX 85 at 1; 7/26/10 Tr. at 148.  Winstead also attached supporting medical documentation. PEX 85 at 2-3.

---

[22] At trial, Winstead testified that he was injured on July 13, 1990. 7/26/10 Tr. at 145.
[23] Although this document does not state that it is in reference to plaintiff's January 21, 1994 injury, the claim number that is referenced in the letter is the same one that appears on the letter sent by Winstead requesting pre-certification.  <u>Compare</u> PEX 81 <u>with</u> PEX 82.
[24] <u>See</u> footnote 25 above.

8.   On January 9, 2002, the DCP sent Winstead's physician letters requesting all of his medical reports and records so that they could evaluate his claims relating to the injuries that occurred on all four dates. PEX 86.

9.   On March 1, 2002, Winstead sent a letter to the DCP with an executed medical authorization and release of confidential information form relating to the injuries that occurred on all four dates. PEX 87.

10.   On March 27, 2002, Winstead received a letter from the DCP indicating that they had not yet received the medical records relating to all four injuries that they had requested of Winstead's physicians. PEX 88 at 1.

11.   On October 2, 2002, Winstead received a letter from the DCP confirming that an IME had been scheduled for October 28, 2002, relating to the injury that occurred on January 21, 1994. PEX 89.

12.   On November 13, 2002, Winstead sent the DCP a letter following his attendance at the scheduled IME and requested a copy of the IME report and a determination regarding his claim for benefits relating to the injuries that occurred on all four dates. PEX 90 at 1.

13.   On December 2, 2002, Winstead requested a Notice of Determination relating to the injuries that occurred on all four dates. PEX 91 at 1.

14.   On December 11, 2002, Winstead received a letter from the DCP indicating that prior to issuing a Notice of Determination, it needed a copy of the DCP 5 Acceptance Letter for the injuries that occurred on all four dates. PEX 92.

15.     On December 12, 2002, Winstead submitted an application requesting a formal

        hearing from OHA as to the injuries that occurred on all four dates. PEX 93; 7/26/10

        Tr. at 152-53.

16.     On December 20, 2002, Winstead received an Order Granting Pre-Hearing

        Conference from OAH that set a pre-hearing conference for January 24, 2003. PEX

        21 at 1; DEX 7 at 1-2.

17.     On April 16, 2003, Winstead submitted additional information relating to the injuries

        that occurred on all four dates. PEX 94 at 1-10.

18.     On May 22, 2003, Winstead submitted additional information relating generally to his

        claim for compensation for the injuries that occurred on all four dates and specifically

        to the income he was earning at the time of his January 21, 1994 injury. PEX 95.

19.     On July 10, 2003, Winstead received a Form 5 Compensation Determination by

        Examiner from the DCP stating that his disability compensation claim for the injuries

        occurring on all four days[25] would be awarded at the rate due a 15% permanent

        partial impairment. PEX 96 at 2.  Winstead was also told that he could apply in

        writing for reconsideration of the decision within 30 dates from the date of the

        decision. PEX 96 at 2.

20.     On July 18, 2003, Winstead sent the DCP a letter relating to the injuries that occurred

        on all four dates in acceptance of their offer of 15% permanent impairment of his left

        upper extremity. PEX 96 at 5.

21.     On August 5, 2003, Winstead was issued a check for $9,956.22 and his counsel was

        issued a check for $2,528.00. 7/26/10 Tr. at 158.

---

[25] Although the determination identifies only the injury that occurred on January 21, 1994, it also references the IME performed by Dr. Smith on October 28, 2002, which related to the injuries that occurred on all four days.  See PEX 90 at 1.

22.    On August 13, 2003, Winstead submitted an application requesting a formal hearing

relating to the injuries that occurred on all four dates. PEX 97.

23.    On August 26, 2003, Winstead received a letter from OHA relating to the injuries that

occurred on all four dates stating that OHA lacked jurisdiction over Winstead's claim

since a <u>Final Order (Denial of Award Order)</u> had not yet been issued by the Disability

Compensation Manager. PEX 98 at 4; PEX 144.

24.    On September 3, 2003, Winstead submitted <u>Claimant's Application for Review</u>,

relating to the injuries that occurred on all four days, to DOES. PEX 98 at 1-3.

25.    On September 3, 2003, Winstead formally requested reconsideration of the

<u>Compensation Notice of Determination by Examiner</u> relating to the injuries that

occurred on all four days. PEX 99; 7/26/10 Tr. at 162.

26.    On September 10, 2003, Winstead filed <u>Claimant's Application for Review</u>, relating

to the injuries that occurred on all four days, with LSO's Office of the Director. PEX

98 at 5-9; PEX 101.

27.    On September 12, 2003, DCP acknowledged receipt of Winstead's request for

reconsideration relating to the injuries that occurred on all four days.[26] PEX 100.

28.    On February 20, 2004, Winstead filed a <u>Petition for Review of a decision of the</u>

<u>Director, District of Columbia Department of Employment Services</u> with the D.C.

Court of Appeals on the basis that the Director failed to issue a decision within 45

days of Winstead's <u>Application for Review</u>, filed August 26, 2003, relating to the

injuries that occurred on all four days.[27] PEX 26.

---

[26] Although the letter itself does not identify any specific dates of injury, it references the claim number assigned by
ORM to Winstead's claim as to the injuries that occurred on all four dates.  <u>Compare</u> PEX 101 <u>with</u> PEX 98 at 1.
[27] Although the petition does not identify any specific dates of injury, it references the decision made on August 26,
2003, which relates to the injuries that occurred on all four days. <u>See</u> PEX 98 at 4.

29.     On March 3, 2004, the D.C. Court of Appeals issued an <u>Order</u> directing Winstead[28] to

show cause within 20 days why his petition for review of the decision issued on

August 26, 2003, relating to the injuries that occurred on all four dates,[29] should not

be dismissed for lack of jurisdiction since it was taken from a non-final and non-

appealable decision. PEX 102.

30.     On March 23, 2004, Winstead filed <u>Petitioners' Response to Show Cause Order</u>,

relating to the injuries that occurred on all four days, with the D.C. Court of Appeals.

PEX 103.

31.     On March 30, 2004, the D.C. Court of Appeals issued an <u>Order</u> denying Winstead's

petition relating to the injuries that occurred on all four days[30] for lack of jurisdiction.

PEX 27.

32.     On April 9, 2004, Winstead's counsel sent a letter[31] to D.C. Councilmember Vincent

Orange requesting that the D.C. Merit Personnel Act be amended to include express

time frames within which the Act's legislatively-mandated administrative functions

had to be executed. PEX 28 at 1.

33.     On August 2, 2006, Winstead received a Form DCORM-1 <u>Final Decision on</u>
<u>Reconsideration</u> from DCP stating that his request for reconsideration relating to the

---

[28] The show cause order issued by the D.C. Court of Appeals on March 3, 2004, was directed *inter alia* at both Winstead and Louis Beale, another plaintiff in this case.
[29] Although the letter does not identify any specific dates of injury, it references the decision made on August 26, 2003, which relates to the injuries that occurred on all four days. <u>See</u> PEX 98 at 4.
[30] Although the order does not identify any specific dates of injury, it references Winstead's response to the show cause order, which relates to the injuries that occurred on all four days. <u>See</u> PEX 103.
[31] Although the letter does not identify individual plaintiffs within the body of the letter, it identifies them at the end of the letter and references the appeal filed *inter alia* by both Winstead and Beale.  <u>Compare</u> PEX 28 <u>with</u> PEX 26.

injuries that had occurred on all four days[32] had been denied as untimely because it was not filed within thirty days of the decision. PEX 104 at 1.

34.   On March 10, 2008, Winstead applied for a formal hearing. 7/26/10 Tr. at 168.

35.   On July 2, 2008, an evidentiary hearing was held before OHA. [#234] at 1; 7/26/10 Tr. at 167.

36.   On July 11, 2008, a full evidentiary hearing was held. 7/26/10 Tr. at 168.

37.   On December 10, 2008,[33] OHA issued a <u>Compensation Order</u> in which it concluded that Winstead failed to request a formal hearing within the statutorily-mandated 30 day period and that OHA therefore lacked jurisdiction to hear his claim on the merits. PEX 234 at 5.

38.   On December 15, 2008, Winstead filed a motion for reconsideration. 7/26/10 Tr. at 168.

39.   On August 20, 2009, Winstead was issued a check for $16,856.11. 7/26/10 Tr. at 159.

<u>Louis Beale</u>

1.   Beale was injured on August 13, 2001. PEX 1 at 1; 7/26/10 Tr. at 87.

2.   On August 15, 2001, Beale filed his <u>First Report of Injury or Occupational Disease</u> with DCP. PEX 1 at 1.

3.   On August 30, 2001, Beale received a <u>Notice of Acceptance</u> from the DCP indicating that his disability compensation claim had been accepted. PEX 2.

---

[32] Although the decision references only the injury date of January 1, 1994, the request for reconsideration it resolves, which was received on September 12, 2003, was one that related to the injuries that occurred on all four days.  <u>See</u> PEX 100; PEX 101; PEX 98 at 1.

[33] The copy of the <u>Compensation Order</u> attached to the <u>Notice Regarding Supplemental Authority</u> does not contain a signature block with a date but the Court accepts Winstead's representation that it was issued on December 10, 2008.

4.      On November 14, 2001, Beale wrote a letter to the DCP complaining that, although

his claim had been approved, he had yet to receive any compensation. PEX 3.

5.      On November 29, 2001, Beale received a Form 5 <u>Compensation Acceptance Order</u>[34]

from the DCP stating that his disability compensation claim had been accepted. PEX

4.

6.      On December 3, 2001, Beale received a Form 5 <u>Compensation Acceptance Order</u>

from the DCP stating that his disability compensation claim had been accepted. PEX

5.

7.      On December 7, 2001, Beale received a letter from Med-Eval confirming that an IME

had been scheduled for him for December 20, 2001. PEX 6.

8.      On January 29, 2002, Beale received a Form 5 <u>Final Compensation</u>

<u>Denial/Termination Order</u> from the DCP indicating that his disability compensation

claim was being terminated because he had fully recovered from his injury and was

able to return to work without any restrictions. PEX 7; 7/26/10 Tr. at 87.  Beale was

also told that he could apply in writing for reconsideration of the decision within 30

dates from the date of the decision. PEX 7.

9.      On February 13, 2002, Beale submitted a written request to the DCP for a hearing for

reconsideration of the decision to terminate his disability compensation. PEX 8;

7/26/10 Tr. at 87-88.

10.     On February 21, 2002, Beale received a response from the DCP to his February 13,

2002, letter,[35] which indicated that further information (in the form of a letter

---

[34] Although the order references an injury date of October 25, 2001, it is clear from the identification of Beale's injury by claim number 14409 that the injury referenced in the letter is the one which occurred on August 13, 2001. <u>Compare</u> PEX 4 <u>with</u> PEX 2.

explaining why he thought he was entitled to further benefits and supporting

documentation) had to be submitted within thirty days of the final termination order.

PEX 9; 7/26/10 Tr. at 88-89.

11.     On March 19, 2002, Beale submitted additional medical documentation to the DCP

and indicated that he was still under a doctor's care.[36] PEX 10.

12.     On March 29, 2002, Beale received a <u>Final Order</u> from the DCP indicating that his

disability compensation claim was being referred back to the claims adjuster for

further consideration. PEX 11 at 1-2.

13.     On April 29, 2002, Beale requested a formal hearing from OHA. PEX 12 at 1.

14.     On June 3, 2002, Beale moved to have his application for a formal hearing dismissed

on the ground that the case had been referred to the claims adjuster for further

determination of his medical status. DEX 11 at 1.

15.     On June 11, 2002, Beale was again informed by the DCP that his case had been

referred back to the claims adjuster. PEX 13 at 1.  Beale was also asked to submit any

necessary medical documentation within ten business days. PEX 13 at 1.

16.     On June 20, 2002, Beale received an <u>Order Dismissing Application for Formal</u>

<u>Hearing without Prejudice</u>[37] from OHA in response to his June 3, 2002, motion on the

basis that the case had been referred back to the claims adjuster for further

consideration and therefore OHA lacked jurisdiction. PEX 14; DEX 11.

---

[35] Although the letter does not indicate the date of Beale's injury nor does it reference a claim number, Beale's February 13, 2002, letter, to which the DCP's letter responds, references the August 13, 2001, date of injury.

[36] Although the letter does not identify the date of Beale's injury, it references claims number 1188, which, in addition to claims number 14409, has been used in reference to his August 13, 2001, injury.  <u>Compare</u> PEX 5 <u>with</u> PEX 7.

[37] Although the order does not identify the date of Beale's injury, it references claims number 14409, which has been used in reference to his August 13, 2001, injury.  <u>Compare</u> PEX 14 <u>with</u> PEX 5.

17.     On July 16, 2002, Beale received a <u>Compensation Denial/Termination Order</u> from the DCP indicating that his disability compensation claim was being denied because his medical condition was not causally related to the injury of August 13, 2001. PEX 15. Beale was informed that he could submit a written request for reconsideration within thirty days from the date of the decision. PEX 15.

18.     On July 25, 2002, Beale received a letter[38] from the D.C. Department of Mental Health's Community Services Agency ("CSA") indicating that, because his benefits had been terminated on January 29, 2002, he could either return to duty immediately or contact the agency to request extended leave. PEX 16 at 3.

19.     On July 31, 2002, Beale responded by letter[39] to CSA's July 25, 2002, letter and indicated his desire for a hearing. PEX 16 at 6.

20.     On August 14, 2002, Beale submitted a formal request to the DCP for reconsideration of DCP's July 16, 2002, denial of benefits. PEX 17 at 1.

21.     On August 28, 2002, Beale received an acknowledgment of his request for reconsideration of his disability compensation payments. PEX 18.

22.     On October 24, 2002, Beale's attorney sent a letter to the DCP complaining that, although Beale had filed a formal request for reconsideration, no decision had been rendered. PEX 19.

23.     On December 12, 2002, Beale's attorney sent a letter to OHA complaining that Beale had been without benefits and a hearing since February 2002. PEX 20.

---

[38] The letter does not contain a reference to either Beale's date of injury or to a claim number.
[39] Beale's letter does not reference either his date of injury or a claims number.

24.    On December 20, 2002, Beale received an <u>Order Granting Pre-Hearing Conference</u> from OAH and setting the pre-hearing conference for January 24, 2003. PEX 21 at 1; DEX 7 at 1-2.

25.    On July 31, 2003, Beale submitted an application to OHA for a formal hearing. PEX 22.

26.    On August 26, 2003, Beale received a letter from OHA stating that OHA lacked jurisdiction over Beale's claim because a <u>Final Order (Denial of Award Order)</u> had not yet been issued by the Disability Compensation Manager. PEX 23; PEX 144.

27.    On September 3, 2003, Beale filed <u>Claimant's Application for Review</u> with the Department of Employment Services Labor Standards Office of the Director. PEX 24 at 2-3.

28.    On November 25, 2003, Beale received an acknowledgment from LSO's Office of the General Counsel that <u>Claimant's Application for Review</u> had been filed. PEX 25.

29.    On February 20, 2004, Beale filed a <u>Petition for Review of a Decision of the Director, District of Columbia Department of Employment Services</u> with the D.C. Court of Appeals on the basis that the Director failed to issue a decision within 45 days of Beale's Application for Review. PEX 26.

30.    On March 3, 2004, the D.C. Court of Appeals issued an <u>Order</u> directing Beale[40] to show cause within 20 days why his petition for review should not be dismissed for lack of jurisdiction since it was taken from a non-final and non-appealable decision. PEX 102; 7/26/10 Tr. at 169-70.

---

[40] The show cause order issued by the D.C. Court of Appeals on March 3, 2004, was directed *inter alia* at both Winstead and Beale.

31.     On March 23, 2004, Beale filed <u>Petitioners' Response to Show Cause Order</u> with the

        D.C. Court of Appeals. PEX 103.

32.     On March 30, 2004, the D.C. Court of Appeals issued an <u>Order</u>[41] denying Beale's

        petition for lack of jurisdiction. PEX 27.

33.     On April 9, 2004, Beale's counsel sent a letter[42] to Councilman Vincent Orange

        requesting that the D.C. Merit Personnel Act be amended to include express time

        frames within which the Act's legislatively-mandated administrative functions had to

        be executed. PEX 28 at 1.

34.     On May 24, 2006, Beale received a Form DCORM-1 <u>Final Decision on</u>

        <u>Reconsideration</u> from the DCP indicating that his <u>Request for Reconsideration of</u>

        <u>Notice of Determination</u> had been denied as untimely because it was not filed within

        thirty days of the decision. PEX 29 at 4.  Beale was informed that, while he could not

        appeal the decision, he did have thirty days or until June 22, 2006, within which to

        file for a hearing with OHA. PEX 29 at 5.

35.     On June 2, 2006, Beale received a Form DCORM-1 <u>Final Decision on</u>

        <u>Reconsideration</u> from the DCP indicating that his <u>Request for Reconsideration of</u>

        <u>Notice of Determination</u> had been denied as untimely because it was not filed within

        thirty days of the decision. PEX 29 at 1.  Beale was informed that, while he could not

        appeal the decision, he did have thirty days, or until July 1, 2006, within which to file

        for a hearing with OHA. PEX 29 at 2.

---

[41] Although the order does not reference either Beale's date of injury or a claims number, it does reference docket number 19-03, which, although it not the docket number associated with Beale's claim, it is one of the three docket numbers listed on Beale's original petition.  Docket number 20-03 is actually the corresponding number to Beale's claim number 1188.  <u>Compare</u> PEX 27 <u>with</u> PEX 25 <u>and</u> PEX 26.

[42] Although the letter does not identify individual plaintiffs within the body of the letter, it both identifies them at the end of the letter and references the appeal filed *inter alia* by both Winstead and Beale.  <u>Compare</u> PEX 28 <u>with</u> PEX 26.

<u>Patricia Newby</u>

1.      Newby was injured on November 30, 1998. PEX 48.

2.      Newby was injured on April 2, 2001. DEX 12 at 1; PEX 43; 7/26/10 Tr. at 136.

3.      On April 7, 2001, Newby filed a <u>First Report of Injury or Occupational Disease</u> with

the DCP relating to her April 2, 2001, injury. PEX 43.

4.      On May 2, 2001, the DCP issued a <u>Final Order of Denial</u> regarding benefit payments

relating to her November 30, 1998 injury. PEX 237 at 2.

5.      On June 24, 2002, Newby received a Form 5 <u>Compensation Determination by</u>

<u>Examiner</u> from the DCP denying her claim for disability compensation relating to her

April 2, 2001, injury. PEX 44 at 1-2; 7/26/10 Tr. at 137.  Newby was informed that

she could apply in writing for reconsideration within thirty days from the date of the

decision. PEX 44 at 1.

6.      On June 28, 2002, Newby received an acknowledgment from ORM that her request

for reconsideration of the decision relating to her April 2, 2001, injury had been

received. PEX 45.

7.      On August 2, 2002, Newby received a <u>Final Order</u> from the DCP indicating that her

request for reconsideration of the decision relating to her April 2, 2001, injury had

been reviewed and that her case was being referred back to the claims adjuster. PEX

46 at 1-4; DEX 12 at 1-4; 7/26/10 Tr. at 140.  The claims adjuster was authorized to:

1) have Newby evaluated by a pain management specialist and request a

psychological evaluation, and 2) determine the amount of a previous overpayment to

Newby and not reinstate wage payments until the overpayment was resolved. PEX 46

at 3-4; DEX 12 at 3-4.  The order further indicated that it was reasonable to conclude

that the injury that Newby suffered on April 2, 2001, was actually a recurrence of the injury that first occurred on November 30, 1998. PEX 46 at 2; DEX 12 at 2.  Finally, the order indicated that Newby was capable of working and therefore not entitled to future loss wage payments. PEX 46 at 4; DEX 12 at 4.

8.      On August 9, 2002, Newby received a letter from the DCP scheduling her for an IME, relating to her April 2, 2001, injury, for August 16, 2002. PEX 47.

9.      On August 23, 2002, Newby filed an <u>Application for a Formal Hearing</u> with AHD. PEX 237 at 3.

10.     On March 17, 2003, Newby's application was dismissed without prejudice by AHD and the case remanded to the DCP. PEX 237 at 3.

11.     On January 23, 2004,[43] Newby formally requested permanent partial disability compensation benefits relating to her November 30, 1998 injury. PEX 48 at 1. Newby submitted a letter from a physician in support of her request.  The letter referenced both a November 1998, injury and an April 2002, injury. PEX 48 at 2. The letter also indicates that Newby was injured in 2001. PEX 48 at 2.

12.     On January 23, 2004,[44] Newby sent the DCP copies of invoices for outstanding medical bills relating to her November 30, 1998, injury. PEX 49.

13.     On June 25, 2004, Newby submitted medical documentation in support of her request for past temporary partial disability relating to her November 30, 1998, injury. PEX 50.

---

[43] The original document identifies the date of the letter as 2003; that was crossed out by hand and replaced with "2004."

[44] <u>Id.</u>

14.     On June 25, 2004, Newby received a letter from the DCP denying her treating

        physician's request for physical therapy on the basis that Newby's request for

        compensation benefits had been previously denied on June 24, 2002.[45] PEX 51.

15.     On June 28, 2004, Newby received a letter (through her attorney) from the DCP

        indicating that she was not eligible for any compensation due to wage loss in her

        present employment.[46] PEX 52.

16.     On October 30, 2008, an evidentiary hearing was held before OHA. PEX 237 at 1.

17.     On March 17, 2009, DOES issued a <u>Compensation Order</u> granting in part and

        denying in party Newby's claim for relief. PEX 237 at 7.  Specifically, DOES

        concluded that the termination of Newby's benefits on July 9, 2002 was not supported

        by substantial evidence and that she was entitled to temporary total disability benefits

        and medical benefits from July 9, 2002 to February 28, 2004. PEX 237 at 6.

<u>Sheila Owens</u>

1.      Owens was injured on February 17, 2004. PEX 189 at 1.

2.      On February 18, 2004, Owens filed a <u>First Report of Injury or Occupational Disease</u>.

        PEX 189 at 1.

3.      On March 9, 2004, Owens received a Form 5 <u>Notice of Controversion/Termination</u>

        <u>Order</u> from the DCP indicating that they were awaiting the receipt of medical reports

        before making a determination on her claim. PEX 190.  Owens was also told that she

        could apply in writing for reconsideration within thirty days of the date of the

        decision. PEX 190.

---

[45] The letter does not indicate the date of injury to which it refers.
[46] The letter does not indicate the date of injury to which it refers.

4.    On April 9, 2004, Owens sent the DCP a letter formally requesting reconsideration of the <u>Notice of Controversion/Termination</u> dated March 9, 2004. PEX 192 at 1; 7/26/10 Tr. at 97.

5.    On April 23, 2004, Owens received a letter from the DCP acknowledging receipt of her request for reconsideration. PEX 193.

6.    On May 21, 2004, Owens faxed the DCP medical records relating to her accident on February 17, 2004. PEX 194 at 1.

7.    On July 19, 2004, Owens received a letter from the D.C. Department of Mental Health ("DMH") stating that the Department of Nursing does not assign light duty to any staff whose primary function is direct patient care because of the risk of injury inherent in the position. PEX 195.

8.    On April 19, 2006, Owens received a Form DCORM-1 <u>Final Decision on Reconsideration</u> from the DCP. PEX 196.  The DCP concluded that her claim should have been accepted and therefore remanded the claim to the adjuster. PEX 196 at 2.

9.    On May 19, 2006, Owens received a Form NOC <u>Notice of Determination Regarding Original Claim for Compensation</u> from the DCP indicating that her claim had been accepted. PEX 197 at 1.  Owens was also told that she could request reconsideration of the determination or appeal. PEX 197 at 1.

<u>Mary Waley</u>

1.    Waley was injured on August 5, 1994. DEX 17; PEX 30; PEX 233 at 1; 7/26/10 Tr. at 108.

2.    On May 29, 2002, the DCP informed Waley's physician that it would not authorize or guarantee benefits for physical therapy. PEX 30.

3.     On July 7, 2003, the DCP informed Waley's physician that it would not authorize or

       guarantee benefits for further office visits or treatment on the basis that her medical

       problems were due to a preexisting condition and not related to the accident that

       occurred on August 5. 1994. PEX 31.

4.     On December 17, 2003, Waley received a Form 5 <u>Compensation Determination by</u>

       <u>Examiner</u> from the DCP indicating that her disability compensation payments would

       be reduced. PEX 32 at 1-2; PEX 233 at 2; 7/26/10 Tr. at 109.  Waley was informed

       that she could apply in writing to the DCP for reconsideration of the decision within

       thirty days. PEX 32 at 1.

5.     On January 7, 2004, Waley formally requested reconsideration of the December 17,

       2003, determination. PEX 33; 7/26/10 Tr. at 109.  Waley also requested a hearing.

       PEX 33.

6.     On January 15, 2004, DCP sent Waley a written acknowledgment of her request for

       reconsideration. PEX 34.

7.     On March 2, 2004, Waley received a letter from her treating physician indicating that,

       because her disability compensation claim had been denied, she was now personally

       responsible for the outstanding balance. PEX 35.

8.     On March 18, 2004, Waley received a letter from the DCP explaining that her

       benefits had been reduced as a result of the December 17, 2003, determination. PEX

       37.

9.     On March 19, 2004, Waley notified the DCP that her physician' office was under the

       impression that her benefits had been terminated and that this should not have

occurred since her request for reconsideration was still pending with the DCP. PEX 36.

10. On March 26, 2004, Waley sent the DCP copies of her medical reports and unpaid medical invoice. PEX 39.

11. On May 21, 2004, Waley received a letter from Concentra indicating that a discogram was not recommended at this point and that they were not longer sure that the symptoms Waley was currently experiencing were related to the injury that occurred on August 5, 1994. PEX 40.

12. On August 19, 2004, Waley received a letter from Concentra indicating that an RS4I interferential stimulator was not recommended at this point and that they were no longer sure that the Waley was currently experiencing were related to the injury that occurred on August 5, 1994. PEX 41.

13. On April 23, 2007, Waley received a Form DCORM-1 Final Decision on Reconsideration from the DCP indicating that her Request for Reconsideration of Notice of Determination had been accepted as timely and upholding the original decision to reduce her benefits. PEX 42 at 1, 6; DEX 17 at 1, 6; Waley Comp. Order at 2. Waley was also told that, while she could not appeal the decision, she did have thirty days, or until May 22, 2007, within which to file for a hearing with OHA. PEX 42 at 1, 6; DEX 17 at 1, 6.

14. On May 17, 2007, Waley applied for a formal hearing. PEX 233 at 2.

15. On July 13, 2007, the AHD received Waley's motion to withdraw her application without prejudice. PEX 233 at 2.

16.     On September 18, 2007, the AHD granted Waley's motion to withdraw and the application for a formal hearing was dismissed without prejudice and her case remanded to ORM. PEX 233 at 2.

17.     On March 7, 2008, Waley filed another application for a formal hearing challenging the December 17, 2003 reduction in her disability compensation benefits. PEX 233 at 2.

18.     On June 9, 2008, an evidentiary hearing was held before OHA. PEX 233 at 1.

19.     On November 4, 2008, the OHA issued a <u>Compensation Order</u> in which it concluded that AHD had jurisdiction to hear Waley's claim and that the Department of Human Services (DHS) had not proven that it properly reduced Waley's disability benefits or that she had failed to cooperate with vocational rehabilitation. PEX 233 at 7-8.

<u>Estate of John Lyles</u>

1.     Lyles was injured on May 24, 1978. 7/26/10 Tr. at 24; PEX 172.

2.     Lyles received temporary total disability pay from June 30, 1979, to May 19, 1992. 7/26/10 Tr. at 24.

3.     On February 14, 2001, Lyles sent the DCP a letter and report from Dr. George Mathews stating that Lyles had a permanent partial impairment of 56%. PEX 171.

4.     On April 8, 2001, Lyles sent the DCP a letter requesting payment of outstanding medical bills received from Dr. Matthews and requesting benefits and a <u>Notice of Determination</u>. PEX 172.

5.     On April 9, 2001, Lyles sent the DCP a letter requesting payment of $2,804.57 for outstanding medical bills received from Dr. Matthews. PEX 173.

6.      On June 19, 2001, Lyles sent the DCP a letter requesting payment of outstanding medical bills received from Dr. Matthews. PEX 174.

7.      Lyles died on October 20, 2001, in the state of Maryland. 7/26/10 Tr. at 21; PEX 188.

8.      On July 2, 2002, Lyles' attorney sent the DCP a letter regarding Lyles' claim for benefits. PEX 175.

9.      On July 4, 2002, the DCP denied Lyles' request for an award of 56% permanent partial disability. 7/26/10 Tr. at 26-27.

10.     On July 24, 2002, the DCP issued a Form 5 <u>Compensation Determination by Examiner</u> denying Lyles' request for a scheduled award for permanency. PEX 176.

11.     On August 14, 2002, Lyles' attorney sent the DCP a letter formally requesting reconsideration of DCP's July 24, 2002 decision. PEX 177.

12.     On August 28, 2002, the DCP sent Lyles' attorney a letter acknowledging receipt of his request for reconsideration. PEX 178.

13.     On December 12, 2002, Lyles' attorney sent OHA a letter requesting a formal hearing. PEX 179.

14.     On July 18, 2003, Lyles' attorney sent OHA a letter enclosing an application for a formal hearing. PEX 180.

15.     On July 31, 2003, Lyles' attorney received a letter from OHA acknowledging his request for a formal hearing and indicating and stating that OHA lacked jurisdiction over the claim because the DCP had not yet issued a final order. PEX 181.

16.     On August 4, 2003, Lyles' attorney sent OHA a letter requesting a formal hearing. PEX 182.

17.     On August 26, 2003, OHA sent Lyles' attorney a letter acknowledging his request for a formal hearing and reiterating OHA's position that it lacked jurisdiction. PEX 183.

18.     On September 3, 2003, Lyles' attorney sent DOES Claimant's Application for Review. PEX 184.

19.     On November 25, 2003, DOES issued a Notice of Application for Review Filed. PEX 185.

20.     On February 9, 2004, Lyles' attorney sent the DCP a letter regarding Lyles' request for permanent partial disability compensation benefits. PEX 186.

21.     On April 9, 2004, Lyle's attorney sent a letter to Councilman Vincent Orange requesting that the D.C. Merit Personnel Act be amended to include express time frames within which the Act's legislatively-mandated administrative functions had to be executed. PEX 187.

22.     On August 2, 2006, the DCP issued its Final Decision on Reconsideration relating to Lyles' Request for Reconsideration of a Notice of Determination. PEX 188.

23.     After Lyles died, his estate continued to receive payments from DCP. 7/26/10 Tr. at 27.

Estate of Reginald Rasheed[47]

1.      Rasheed was injured on January 12, 1998. PEX 108.

2.      On September 11, 1998, the DCP issued a Form 5 Compensation Acceptance Order stating the Rasheed was due compensation for medical benefits relating to his January 12, 1998 injury. PEX 108 at 2.

3.      Rasheed was injured on May 14, 1999. 7/26/10 Tr. at 48; PEX 105.

---

[47] Findings of fact as to this plaintiff are made herein for the first time.

4.    On June 9, 1999, Rasheed received a letter from CorVel Corporation indicating that, per a request from the District of Columbia government, an IME had been scheduled for him on June 30, 1999 at 9:30 a.m., with regard to his May 14, 1999 injury. PEX 106.

5.    On June 14, 1999, the DCP issued a <u>Notice of Determination by Examiner</u> denying Rasheed's claim for disability pay with regard to his May 14, 1999 injury because it was unable to confirm that his injuries were work-related. 7/26/10 Tr. at 48; PEX 107.  Rasheed was also informed that he had thirty days within which to request, in writing, a review of the decision. PEX 107.

6.    On July 23, 1999, the DCP issued a <u>Compensation Denial/Termination Order</u>, in which it stated that it was unable to confirm that the May 14, 199 injury Rasheed complained of occurred during the course and scope of his employment and further, that the medical treatment he was receiving was for a pre-existing condition. PEX 109; 7/26/10 Tr. at 50.

7.    On August 11, 1999, Rasheed sent OHA a letter requesting a formal hearing regarding his January 12, 1998 injury. PEX 110.

8.    On August 19, 1999, Rasheed received a letter from OHA acknowledging his request for a formal hearing regarding his January 12, 1998 injury and indicating that without it needed, by September 13, 1999, either a <u>Denial of Award of Compensation Benefits</u> or <u>Notice of Loss Wage Earning Capacity</u>, and that without either of those documents, the OHA lacked the authority to grant the requested hearing. PEX 111.

9.    On August 23, 1999, Rasheed sent the OHA a copy of his <u>Final Order of Denial</u> regarding his January 12, 1998 injury. PEX 112.

10.     On October 26, 1999, a full evidentiary hearing was held by OHA regarding

        Rasheed's January 12, 1998 injury. PEX 113 at 2; 7/26/10 Tr. at 51.

11.     On September 5, 2000, DOES issued a <u>Final Compensation Order</u> adopting the

        Hearing Officer's <u>Recommended Decision</u> regarding his January 12, 1998 injury.

        PEX 113; 7/26/10 Tr. at 51.

12.     On October 17, 2000, Rasheed sent the DCP a letter regarding his May 14, 1999

        injury declined the DCP's offer to let him repurchase the leave he used while he was

        sick. PEX 114; 7/26/10 Tr. at 51.

13.     On December 4, 2000, Rasheed sent the DCP a letter requesting payment of a

        medical bill, judgment, and writ of attachment regarding medical expenses incurred

        as a result of Rasheed's May 14, 1999 injury. PEX 115.

14.     On January 5, 2001, Dr. Rankin issued a Supplemental Orthopaedic Report regarding

        Rasheed's January 1998 injury. PEX 117 at 2.

15.     On April 17, 2001, Rasheed sent the DCP a letter formally requesting workers'

        compensation benefits with regard to both his January 12, 1998 and May 14, 1999

        injuries. PEX 116.

16.     On June 19, 2001, Rasheed received a letter from the Office of Pay and Retirement

        Services stating that 25% of his wages would be garnished. PEX 118.

17.     On June 21, 2001, Rasheed sent the DCP a letter requesting a schedule award of

        benefits with regard to both his January 12, 1998 and May 14, 1999 injuries. PEX

        117.

18.     On August 8, 2001, Rasheed sent a letter to counsel for Providence Hospital stating

        that their efforts to garnish his wages were inappropriate in light of the fact that the

DCP had determined that the responsibility for such payments was the District of Columbia Workers' Compensation Program. PEX 119.

19.   On February 13, 2002, Rasheed sent the DCP a letter asking about the status of his April 17, 2001 request for compensation benefits relating to both his January 12, 1998 and May 14, 1999 injuries. PEX 120.

20.   On March 25, 2002, Rasheed sent the DCP a second letter asking about the status of his April 17, 2001 request for compensation benefits relating to both his January 12, 1998 and May 14, 1999 injuries. PEX 121.

21.   On June 7, 2002, Rasheed sent the DCP a third letter asking about the status of his previous request for compensation benefits relating to both injuries. PEX 122.

22.   On September 24, 2002, Rasheed sent the DCP a fourth letter asking about the status of his previous request for compensation benefits relating to both injuries. PEX 123.

23.   On October 31, 2002, Rasheed sent the DCP a fifth letter asking about the status of his previous request for compensation benefits relating to both injuries. PEX 124.

24.   On December 2, 2002, Rasheed send the DCP a sixth letter asking about the status of his previous request for compensation benefits relating to both injuries and also indicating his surprise at learning that the DCP had no record of his previous correspondence. PEX 125.

25.   On December 12, 2002, Rasheed sent OHA a letter requesting a formal hearing and indicating that he was without a Notice of Determination because the DCP had refused to issue one. PEX 126.

26.   On December 13, 2002, ORM sent Rasheed a letter acknowledging receipt of his request for reconsideration regarding both injuries. PEX 127.

27.   On July 31, 2003, Rashhed sent the DCP a letter seeking an award for 25%
      permanent impairment of his left lower extremity. PEX 128.

28.   On October 9, 2003, Universal Medical Exams sent Rasheed a letter informing him
      that an IME had been scheduled for him on October 23, 2003 at 10:15 a.m. PEX 129.

29.   On November 25, 2003, Universal Medical Exams sent Rasheed a letter informing
      him that an IME had been scheduled for him on December 11, 2003 at 10:30 a.m.
      PEX 130.

30.   On December 1, 2003, ORM issued a <u>Reconsideration Final Order</u> regarding both of
      Rasheed's injuries. PEX 131.  Rasheed was informed that his request for
      reconsideration had been denied as premature on the grounds that the DCP had yet to
      issue a <u>Final Compensation Denial/Termination Order</u>. PEX 131.  Rasheed was also
      informed that he could apply for a hearing within thirty days. PEX 131.

31.   On December 8, 2003, Rasheed sent DCP a letter forwarding the <u>Reconsideration
      Final Order</u> issued on December 1, 2003. PEX 132.

32.   On March 1, 2004, Rasheed sent ORM a letter acknowledging his receipt of a draft in
      the amount of $2,989.20 and indicating further that the payment would be interpreted
      as a formal determination regarding both of his injuries and that he wished to
      formally request its reconsideration. PEX 133.

33.   On March 15, 2004, Rasheed sent DCP a letter requesting a copy of the DCP's
      written determination regarding both of his injuries. PEX 134.

34.   On April 2, 2004, the DCP issued a Form 5 <u>Compensation Determination by
      Examiner</u> regarding Rasheed's May 14, 1999 injury. PEX 135.  The DCP approved
      Rahseed's claim for permanent partial impairment disability benefits concluded that

Rasheed had an 11% permanent impairment to his left lower extremity. PEX 135; 7/26/10 Tr. at 52.

35.   On April 12, 2004, Rasheed sent the DCP a letter requesting formal reconsideration of the DCP's April 2, 2004 determination. PEX 136.

36.   After August 3, 2004, Rasheed started receiving biweekly checks in the amount of $615.42. 7/26/10 Tr. at 52.

37.   Rasheed was paid lost wage and medical benefits of $14,785.20 for the period from October 23, 2003 to August 3, 2004. 7/26/10 Tr. at 52-53.

38.   Rasheed died in February of 2006. 7/26/10 Tr. at 38.  See also Suggestion of Death Upon the Record Under Rule 25(a)(1).  He died without a will and is survived by his mother, Janice Hudson, and two daughters. 7/26/10 Tr. at 37.

39.   According to Hudson, after reviewing copies of certain checks that were sent to her son, some of them did not bear her son's endorsement while others did. 7/26/10 Tr. at 53-55.

40.   On June 25, 2009, Rasheed's attorney sent the DCP a letter inquiring as to the status of the DCP's September 11, 1998 determination that Rasheed was due compensation for medical benefits relating to his January 12, 1998 injury. PEX 108.

<u>Ruby Davis</u>

1.   At trial, the Court granted defendant's motion to dismiss. 7/26/10 Tr. at 57, 228.


_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE